## LOUISVILLE AND NASHVILLE RAILROAD COMPANY v. GARRETT ET AL., CONSTITUTING THE RAILROAD COMMISSION OF KENTUCKY.[1]

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 23. Argued April 4, 1912.—Decided December 1, 1913.

The same rule by which the Federal court has jurisdiction to determine all the questions, local as well as Federal, when a Federal question is raised by the bill, governs the application for preliminary injunction under the act of June 18, 1910, c. 309, 36 Stat. 539, 557.

Unless the case imperatively demands such a decision, this court is reluctant to adjudge a state statute to be in conflict with the state constitution before that question has been considered by the state

---

[1] Original docket title Louisville & Nashville Railroad Company v. Siler et al., constituting the Railroad Commission of Kentucky.

tribunals to which the question properly belongs. *Michigan Central R. R. Co.* v. *Powers*, 201 U. S. 245.

Prescribing rates for the future is a legislative and not a judicial act.

In prescribing intrastate rates the legislature of a State may act directly or, in the absence of constitutional restriction, it may commit the authority to do so to a subordinate body; and *held* that the legislature of Kentucky by the act of March 10, 1900, properly authorized the Railroad Commission of that State under certain conditions to fix reasonable intrastate rates for railroad transportation in conformity with the provisions of the constitution of the State.

The legislature may determine what are reasonable rates either directly or through a subordinate body and use methods like those of judicial tribunals to elicit facts without invading the province of the judiciary. *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210.

In this case it does not appear that the State Railroad Commission acted in an arbitrary manner in fixing intrastate railroad rates; nor was it necessary to give legality to its order as to particular rates established to require a reduction in other rates.

Failure in a state statute establishing a railroad commission and giving it authority to fix reasonable rates to provide for an appeal from orders of the commission does not deny the carrier right of access to the courts to review an order that fixes rates so unreasonably low as to be confiscatory and is not an unconstitutional denial of due process of law under the Fourteenth Amendment.

Presumably the State, as well as the Federal, courts are open to a carrier to test the constitutionality of an order made by a railroad commission and to obtain protection by bill in equity against its enforcement if unconstitutional. *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265.

Penalties which are so unreasonable and severe as to be an unconstitutional denial of due process of law will not render a rate statute unconstitutional if they are separable, as in this case.

The right of the carrier to make its own intrastate rates is subject to the constitutionally enacted law of the State; in the absence of a legislative rate courts apply the common law in passing upon the reasonableness of the rates, but, after legislative rates have been established the courts apply those rates unless there are constitutional objections.

So long as the legislature acts within its proper sphere, courts cannot substitute their judgment with respect to reasonableness of the established rates.

While a State may permit appeals to the courts from the rate making

orders of its railroad commission, *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210, failure to provide for such an appeal does not deny the carrier due process of law as guaranteed by the Fourteenth Amendment.

Loss in revenue generally follows reductions in rates but that does not necessarily prove that the reduced rates are confiscatory; there must be further proof that they do not allow a fair return for service rendered.

An order of the Railroad Commission of Kentucky made under the act of March 10, 1900, is a legislative act under delegated power and has the same force as if made by the legislature and is for this reason a law passed by the State within the meaning of the contract clause of the Federal Constitution.

A charter provision is not violated under the contract clause by a subsequent state law otherwise legal, if, prior to the enactment of the latter, the chartered corporation has subjected itself to the operation of an amendment to the state constitution reserving the power to alter, amend and repeal charters and franchises.

*Minnesota Rate Cases*, 230 U. S. 352, followed to the effect that the establishment of railroad rates wholly intrastate by a State Railroad Commission is not an unwarrantable interference with, or a regulation of, interstate commerce.

In an equity suit by a carrier against the members of a State Railroad Commission to restrain enforcement of a rate order under a statute which provided for awards of reparation for failure to comply with the order, the court should not pass upon the validity of any of such awards made to parties not before the court.

186 Fed. Rep. 176, affirmed.

THE facts, which involve the constitutionality under the constitution of Kentucky and also under the Constitution of the United States of the State Railroad Commission Statute of Kentucky and the legality of orders made by the Commission, are stated in the opinion.

*Mr. Henry L. Stone* and *Mr. Albert S. Brandeis*, with whom *Mr. William G. Dearing* and *Mr. William A. Colston* were on the brief, for appellant.

*Mr. Edward W. Hines* and *Mr. James Garnett*, Attorney General of the State of Kentucky, with whom *Mr. Charles*

*C. McChord, Mr. J. Van Norman, Mr. James Breathitt,* former Attorney General of the State of Kentucky, and *Mr. John F. Lockett* were on the brief, for appellees.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is an appeal from an order denying a motion for an interlocutory injunction. *Louisville and Nashville Railroad Co.* v. *Siler,* 186 Fed. Rep. 176. The motion was heard by three judges, and the appeal is taken under § 17 of the act of June 18, 1910, c. 309, 36 Stat. 539, 557.

The suit was brought by the Louisville and Nashville Railroad Company, a corporation organized under the laws of Kentucky, to enjoin the enforcement of two orders made by the Railroad Commission of that State on August 10, 1910. One of these orders prescribed maximum freight rates for certain intrastate traffic, that is, for the transportation of corn, rye, barley, malt, empty barrels, boxes, etc., from three points of origin, Louisville, Covington and Newport, to sixteen points of destination in Kentucky. The second order awarded specified amounts in reparation for payments previously made to the carrier for such transportation in excess of the rates found to be reasonable.

For many years the Railroad Company had given special rates to the owners of distilleries along its lines in Kentucky for the transportation of the commodities above mentioned, which constituted their raw materials and supplies. These rates were withdrawn on March 25, 1910, and what are described as the standard rates of the company, that is, those which had theretofore been charged to others than distillers, were substituted. Thereupon, numerous distillery companies complained to the Railroad Commission of the State, insisting that the new rates were exorbitant and that the former rates were just

and reasonable. After hearing, the Commission sustained the contention of the petitioners and fixed the maximum rates in question. These rates were the same as the special rates which, prior to March 25, 1910, the Railroad Company had given to the distillery companies; but, by the Commission's order, the rates as fixed were made applicable to the transportation between the points stated, of the described commodities without distinction as to persons or as to the use to be made of the commodities by the consignees.

The statute under which the Commission acted, in establishing these rates, is that of March 10, 1900, known as the McChord Act (Kentucky Statutes, § 820a, Carroll's edition, 1909).[1] It provides in substance that when complaint shall be made to the Railroad Commission, accusing any railroad company of charging extortionate rates, or when the Commission shall receive information or have reason to believe that such rates are being charged, it shall be its duty "to hear and determine the matter as speedily as possible." The Commissioners are to give the company complained of not less than ten days' notice, stating the time and place of hearing and the nature of the complaint or matter to be investigated. They "shall hear such statements, argument or evidence offered by the parties as the Commission may deem relevant, and should the Commission determine that the company or corporation is, or has been, guilty of extortion, said Commission shall make and fix a just and reasonable rate, toll or compensation, which said railroad company or corporation may charge, collect or receive for like services thereafter rendered." The rate so fixed is to be entered as an order on the record book of the Commission; a copy thereof is to be mailed to a representative of the railroad company

---

[1] This statute is set forth in full in *McChord* v. *L. & N. R. R. Co.*, 183 U. S. 483, 484, 485; and in *Siler* v. *L. & N. R. R. Co.*, 213 U. S. 175, 178–180.

affected, and it is to be "in full force and effect at the expiration of ten days thereafter, and may be revoked or modified by an order likewise entered of record." If the railroad company, or any officer, agent or employé thereof charges a greater rate for like services thereafter, "said company . . . and said officer, agent or employé, shall each be deemed guilty of extortion, and upon conviction shall be fined for the first offence in any sum not less than five hundred dollars, nor more than one thousand dollars, and upon a second conviction, in any sum not less than one thousand dollars nor more than two thousand dollars, and for a third and succeeding conviction in any sum not less than two thousand dollars nor more than five thousand dollars." The Circuit Court, in the appropriate counties as prescribed by the statute, is to have jurisdiction of such prosecutions, which are to be by indictment.

The bill attacked the statute, and the action of the Commission, as violative of the rights secured to the complainant by the Federal Constitution. Objections were also made under the constitution and statutes of the State. Demurrers were filed but upon these no decision was made. The motion for preliminary injunction was heard upon bill and affidavits. In denying the motion, the court did not pass upon the validity of the second order as it was of the opinion that those in whose favor the award of reparation had been made were "necessary parties in interest;" these had not been brought in. 186 Fed. Rep. 176, 203.

*First.* The order fixing rates.

Because of the Federal questions raised by the bill the Circuit Court had jurisdiction and was authorized to determine all the questions in the case, local as well as Federal. *Siler* v. *Louisville & Nashville R. R.*, 213 U. S. 175, 191. A similar rule must be deemed to govern the application for preliminary injunction under the statute which requires a hearing before three judges, and authorizes an

appeal to this court. 36 Stat. 557. This statute applies to cases in which the preliminary injunction is sought in order to restrain the enforcement of a state enactment upon the ground of its "unconstitutionality." The reference, undoubtedly, is to an asserted conflict with the Federal Constitution, and the question of unconstitutionality, in this sense, must be a substantial one. But, where such a question is presented, the application is within the provision, and this being so, it cannot be supposed that it was the intention of Congress to compel the exclusion of other grounds and thus to require a separate motion for preliminary injunction, and a separate hearing and appeal, with respect to the local questions which are involved in the case and would properly be the subject of consideration in determining the propriety of granting an injunction pending suit. The local questions arising under the state constitution and statutes were therefore before the Circuit Court and the appeal brings them here. They may be first considered.

1. It is objected that the act of March 10, 1900, violates §§ 27, 28, 109 and 135 of the state constitution [1] by under-

---

[1] The provisions referred to are as follows:

"SECTION 27. The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

"SECTION 28. No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

"SECTION 109. The judicial power of the Commonwealth, both as to matters of law and equity, shall be vested in the Senate when sitting as a court of impeachment, and one Supreme Court (to be styled the Court of Appeals) and the courts established by this Constitution.

"SECTION 135. No Courts save those provided for in this Constitution, shall be established."

taking to confer judicial powers upon the Commission. By these sections, provision is explicitly made for three distinct departments of government; the judicial power of the Commonwealth is vested in the courts established by the constitution, and no judicial power can be exercised by any other officer except those thus named unless authorized by some other provision of that instrument. *Roberts* v. *Hackney,* 109 Kentucky, 265, 268; *Pratt* v. *Breckinridge,* 112 Kentucky, 1.

So far as we are advised, the Court of Appeals of Kentucky has not passed upon the validity of the act in question; and this court has often expressed its reluctance to adjudge a state statute to be in conflict with the constitution of the State before that question has been considered by the state tribunals—to which it properly belongs— unless the case imperatively demands such a decision. *Pelton* v. *National Bank,* 101 U. S. 143, 144; *Michigan Central R. R. Co.* v. *Powers,* 201 U. S. 245, 291. Here, the argument against the statute is not of that compelling character.

It has frequently been pointed out that prescribing rates for the future is an act legislative, and not judicial, in kind. *Interstate Commerce Commission* v. *C., N. O. & T. P. Ry. Co.,* 167 U. S. 479, 499; *McChord* v. *Louisville & Nashville R. R. Co.,* 183 U. S. 483, 495; *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, 226; *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1, 8. It pertains, broadly speaking, to the legislative power. The legislature may act directly, or, in the absence of constitutional restriction, it may commit the authority to fix rates to a subordinate body. *Stone* v. *Farmers' Loan & Trust Co.,* 116 U. S. 307, 336; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 393, 394; *Atlantic Coast Line* v. *North Carolina Corporation Commission,* 206 U. S. 1, 19; *Honolulu Rapid Transit & Land Co.* v. *Hawaii,* 211 U. S. 282, 291; *Grand Trunk Rwy. Co.* v. *Railroad Commission of Indiana,* 221

U. S. 400, 403. The Railroad Commission of Kentucky was established by § 209 of the Constitution (adopted in the year 1891) which provided that "the powers and duties of the Railroad Commissioners shall be regulated by law" and that "until otherwise provided by law, the Commission so created shall have the same powers and jurisdiction, perform the same duties, be subject to the same regulations, and receive the same compensation, as now conferred, prescribed and allowed by law to the existing Railroad Commissioners;" and by § 218 of the same instrument (the long and short haul provision) the Commission was authorized "in special cases, after investigation" to permit a less charge for longer than for shorter distances and to "prescribe the extent" to which the common carrier might be "relieved from the operations" of the section. *Louisville & Nashville R. R. Co.* v. *Commonwealth*, 106 Kentucky, 633; 183 U. S. 503. It is unnecessary to review the statutes defining the powers of the then existing Commission, to which § 209 refers (General Statutes of Kentucky, ed. 1888, pp. 1021 *et seq.;* Act of March 7, 1890; I Acts, 1889–90, p. 25). For, while the former Commission had not been authorized to fix rates, it can hardly be doubted that the constitution, in providing that the powers and duties of the new Commission should be regulated by law, contemplated that it should be available as an appropriate instrument in the supervision and regulation of railroads and left the legislature free to adopt, if it saw fit, a practice already familiar (*Interstate Commerce Commission* v. *C., N. O. & T. P. Ry. Co.*, 167 U. S. 479, 495, 496) and to call this agency to its aid in prescribing reasonable intrastate rates. This authority the legislature granted by the act of March 10, 1900, empowering the Commission where, as in this case, particular rates were found to be exorbitant, to fix the reasonable rates thereafter to be charged. (*Siler* v. *Louisville & Nashville R. R. Co.*, 213 U. S. 175, 197.)

The contention is that, before the Commission makes such an order, it is required to exercise judicial functions. It is first to determine whether the carrier has been exact-ing more than is just and reasonable; it is to give notice and a hearing; it is to "hear such statements, arguments or evidence offered by the parties" as it may deem relevant; and, it is in case it determines that the carrier is "guilty of extortion" that it is to prescribe the just and reasonable rate.   Still, the hearing and determination, viewed as prerequisite to the fixing of rates, are merely preliminary to the legislative act.   To this act, the entire proceeding led; and it was this consequence which gave to the proceeding its distinctive character.   Very properly, and it might be said, necessarily—even without the express command of the statute—would the Commission ascertain whether the former, or existing, rate, was unreasonable before it fixed a different rate.   And in such an inquiry, for the purpose of prescribing a rule for the future, there would be no invasion of the province of the judicial department.   Even where it is essential to maintain strictly the distinction between the judicial and other branches of the government, it must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as distinguished from judicial, powers.   The legislature, had it seen fit, might have conducted similar inquiries through committees of its members, or specially constituted bodies, upon whose report as to the reasonableness of existing rates it would decide whether or not they were extortionate and whether other rates should be established, and it might have used methods like those of judicial tribunals in the endeavor to elicit the facts.   It is "the nature of the final act" that determines "the nature of the previous inquiry."   *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210, 227.

It is also urged in support of the objection that the order of the Commission is to be "in full force and effect" at the expiration of ten days after notice, and that this is the equivalent of a declaration that the order shall be final and conclusive, but the finality of the act did not change its essential character. So far as it was final, unless revoked or modified by the Commission, it was final as a legislative act within the Commission's authority.

2. It is contended that the Commission acted arbitrarily. We are referred to the allegations of the bill that there was "no testimony" before the Commission "that did establish or that tended to establish" the unjust or unreasonable nature of any of the rates maintained by the appellant; that there was "no evidence" introduced in the investigation or considered by the Commission "showing or tending to show" that the appellant's rates were "in and of themselves unjust, unreasonable or extortionate"; that the evidence "had no proper relation" to the reasonableness of rates for transporting the commodities in question when they were to be used for distillery purposes; and that "no evidence whatsoever was adduced at the hearing and investigation aforesaid, which showed or tended to show in the slightest degree what was or might be a just or reasonable rate to be charged" for the transportation described in the Commission's order.

But it appears that upon receiving the complaint of the distillers with respect to the rates which the appellant had put into effect, the Commission set the matter for hearing; that the parties were heard; that each party produced a number of witnesses; and that the appellant, represented by counsel, was permitted to cross-examine the witnesses of the complainants. The rates as fixed by the Commission were the same as those which for many years had been maintained by the appellant for the distillers' supplies. The evidence taken by the Commission was not before the court below; and the general allegations of

the bill, which in substance stated the judgment of the pleader as to what such evidence did not "establish" or "tend to establish," and the statements contained in the affidavits submitted upon the application for injunction, were utterly insufficient to justify the court in enjoining the rates upon the ground that the Commission either had denied the hearing which the statute contemplated or by its arbitrary action had been guilty of an abuse of power.

It is also charged, invoking a doctrine analogous to that declared in *Southern Pacific Co.* v. *Interstate Commerce Commission,* 219 U. S. 433, that the Commission assumed a power which it did not possess by proceeding upon the theory of a supposed equitable estoppel in favor of the distillers because they had been induced to erect and extend their plants upon the faith of the former rates. This contention finds no support in the record. The Commission purported to act under its statutory authority, and, finding the rates charged by the carrier to be extortionate, fixed other rates which they declared to be reasonable.

Again, it is further said that the enforcement of the rate order should have been enjoined in order to prevent unjust discriminations and undue preferences in contravention of §§ 817 and 818 of the Kentucky statutes. Section 817 prohibits unjust discrimination in charges, as between persons, for like and contemporaneous service in transportation. Section 818 makes it unlawful to give any undue or unreasonable preference or advantage to one person or locality as compared with another. Section 819 prescribes penalties for violation, the prosecution to be by indictment. The point of this objection is that obedience to the Commission's order with respect to the traffic from the three places of origin to the sixteen places of destination therein mentioned will bring about discrimination in intrastate rates, contrary to these statutes, as against thirty-two other distillery stations on the lines

of the appellant, the distillers at which, so far as appears, have not complained of the appellant's rates.

In view of the decision in *Commonwealth* v. *Louisville & Nashville R. R. Co.*, 20 Ky. Law Rep. 491, to the effect that the provisions of § 818 are too uncertain to support a criminal proceeding under § 819, it is not contended by the appellant that it would be subject to the prescribed penalties so far as § 818 is concerned. And it is urged by the Attorney General of the State, on behalf of the appellees, that § 817 does not apply to discrimination as between localities.

But, aside from these considerations, we find the objection to be without merit. The Commission dealt with the question before it, and, on complaint as to the rates to the sixteen points of destination, ordered what it found to be reasonable rates for that transportation. In so doing, it acted in conformity with the statute. To give legality to its order as to the particular rates in question, it was not necessary for the Commission to require a reduction in other rates. Certainly, the fact that the other rates described, which had not yet been passed upon by the Commission, might likewise be open to the objection of unreasonableness and that their maintenance by the appellant might lead to unjust discrimination, would furnish no basis for restraining the enforcement of the Commission's order if that order were otherwise valid.

3. The order is further attacked upon the ground that the statute under which it was made operates to deprive the carrier of its property without due process of law and to deny to it the equal protection of the laws contrary to the Fourteenth Amendment.

It is insisted that the failure to provide for an appeal to any court from the final order of the Commission, or for a judicial review of the reasonableness of the prescribed rates before they become effective, makes the statute

void. But the statute does not deny to the carrier the right of access to the courts for the purpose of determining any matter which would be the appropriate subject of judicial inquiry. We have not been referred to any decision of the state court holding that the statute should be so construed (*Chicago &c. Railway Co.* v. *Minnesota,* 134 U. S. 418, 456). If the Commission establishes rates that are so unreasonably low as to be confiscatory, an appropriate mode of obtaining relief is by bill in equity to restrain the enforcement of the order. *Chicago &c. Railway Co.* v. *Minnesota,* 134 U. S. 418, 459, 460; *St. Louis & San Francisco Ry. Co.* v. *Gill,* 156 U. S. 649, 659, 666; *Ex parte Young,* 209 U. S. 123, 166. Presumably, the courts of the State, as well as the Federal courts, would be open to the carrier for this purpose (*Home Telephone Co.* v. *Los Angeles,* 211 U. S. 265, 278) without express statutory provision to that effect. In answer to the present objection, it is sufficient to say that there is no showing here of an attempt to preclude such resort to the courts, or to deny to the carrier the assertion of its rights, unless it can be found in the severity of the penalties attached to disobedience of the order. And, if it were assumed that these would be open to objection as operating to deprive the carrier of a fair opportunity to contest the validity of the Commission's action, still, the penal provisions would be separable, and the force of the remaining portion of the statute would not be impaired. *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 395; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 53, 54; *Granada Lumber Co.* v. *Mississippi,* 217 U. S. 433, 443; *Western Union Telegraph Co.* v. *Richmond,* 224 U. S. 160, 172; *The Minnesota Rate Cases,* 230 U. S. 352, 380; *Southern Pacific Co.* v. *Campbell,* 230 U. S. 537, 553.

4. The appellant, however, submits a broader contention which concerns the scope of the review to which it is entitled in this suit and the nature of the judicial function

where rates fixed by the legislature, or under its direction, are assailed as unreasonable.

It is urged that so long as a carrier's existing rates are just and reasonable for the services it performs, it is within its constitutional and statutory rights; that what constitutes a just and reasonable rate for the services it has performed is a question of fact upon which the carrier is entitled to a judicial hearing; that even more clearly is it entitled to such a hearing, if, as a consequence of a decision by the Commission that it has exceeded the limits of just and reasonable compensation for past services, it "must forfeit in favor of such statutory body its rate-making power and be deprived of that property right with respect to 'like services thereafter rendered' as provided in the McChord Act." It is said, further, that under the statute the finding from the evidence that the carrier has charged more than a reasonable compensation is "the essential jurisdictional fact" which must exist before the Commission can fix rates, and it is insisted that, if upon a judicial investigation and the evidence adduced by the parties, it turns out that this jurisdictional fact did not exist, then the Commission's entire action must be regarded as null and void, without regard to the question whether the new rates prescribed by it, in such circumstances, are reasonable or unreasonable, compensatory or confiscatory. It is therefore contended that the appellant is now entitled to a judicial hearing upon the questions of fact as to the reasonableness of the particular rates existing at the time the order was made as well as of those fixed by the Commission; and that in this view the injunction asked for should have been granted.

These arguments are elaborated and earnestly pressed, but the questions presented have been so frequently dealt with by this court that an extended discussion is unnecessary. The right of the carrier to make its own intrastate rates is subject to the law of the State con-

stitutionally enacted. In the absence of a legislative rate, it is the province of the courts in deciding cases that arise between shippers and carriers to pass upon the reasonableness of the compensation which the carrier has demanded for its services. In so doing, the courts apply the common law. But it is the province of the legislature to make the law; and when the legislature, or the body acting under its authority, establishes the rate to be thereafter charged by the carrier, it is the duty of the courts to enforce the rule of law so made unless the constitutional limits of the rate-making power have been trangressed. The rate-making power necessarily implies a range of legislative discretion; and, so long as the legislative action is within its proper sphere, the courts are not entitled to interpose and upon their own investigation of traffic conditions and transportation problems to substitute their judgment with respect to the reasonableness of rates for that of the legislature or of the railroad commission exercising its delegated power. It may be assumed that the statute of Kentucky forbade arbitrary action; it required a hearing, the consideration of the relevant statements, evidence and arguments submitted, and a determination by the Commission whether the existing rates were excessive. But, on these conditions being fulfilled, the questions of fact which might arise as to the reasonableness of the existing rates in the consideration preliminary to legislative action would not become, as such, judicial questions to be reëxamined by the courts. The appropriate questions for the courts would be whether the Commission acted within the authority duly conferred by the legislature, and also, so far as the amount of compensation permitted by the prescribed rates is concerned, whether the Commission went beyond the domain of the State's legislative power and violated the constitutional rights of property by imposing confiscatory requirements. *Stone* v. *Farmers' Loan & Trust Co.,* 116 U. S. 307, 331;

*Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 397–399; *Smyth* v. *Ames*, 169 U. S. 466, 526; *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739, 754; *San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439, 446; *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 8, 17; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 41; *The Minnesota Rate Cases*, 230 U. S. 352, 433, 434. Undoubtedly, a State may permit appeals to its courts from the rate-making orders of its railroad commission and, upon the review of such orders, it may expressly authorize its judicial tribunals to investigate and decide questions which otherwise would not belong to them, or even to act legislatively (*Prentis* v. *Atlantic Coast Line, supra*). But the guaranties of the Fourteenth Amendment do not entitle the carrier to the exercise by the courts of such extra-judicial authority.

5. With respect to the question of confiscation, the Circuit Court ruled that the bill did not "clearly tender an issue that could be said to involve confiscatory rates." The court also referred in its opinion to the statement in the brief of complainant's counsel that the complainant was not bound in this case "to allege or prove that the new rates were confiscatory" and also to an oral disclaimer of a purpose to rely upon any such contention. "This concession," the court said, "we think, was but natural, in view of the history of the rates which the railroad company voluntarily maintained for years prior to March 25, 1910, as before pointed out. No averment is made touching the proportions in volume of distillers' traffic and of non-distillers' traffic, and it could not be assumed that the company had been carrying distillers' supplies and products at confiscatory rates, nor that the extension of those rates to all similar traffic on the lines in question would amount to the confiscation of property." 186 Fed. Rep. 176, 191.

It is explained by the appellant that what was conceded

below was that the bill as amended did not aver that the rates fixed by the Commission would result in the confiscation of appellant's property on its entire intrastate business, but that it is insisted, and was insisted below, that the rates would not yield a fair or reasonable compensation for the services performed, and would deprive the company of the fair and reasonable return which it is entitled to earn upon the property devoted to such services, with respect to the described traffic.

Without passing upon the general propositions advanced in argument, it suffices to say that we are of the opinion that the bill as amended wholly failed to make a case entitling the appellant to the relief sought. Apart from the merely general averments, it is alleged that the rates fixed by the order would cause an annual loss in revenue on intrastate freight of at least $15,600, and also that, in consequence of the effect on interstate rates, there would be an additional annual loss of not less than $3,000; further, that if the carrier were compelled to put in similar rates to the thirty-two other distillery stations, there would be a loss of $54,000 a year on shipments to those places; and that there would be other losses to an amount not specified, on shipments to consignees other than distillers.

But it may be supposed that, other conditions being the same, a reduction in rates found to be excessive will cause a loss in revenue; and the question is not simply as to the amount of reduction but whether the rates as fixed would allow a fair return. The bill does not show the value of the property employed, the expenses of operation, or the return which would be permitted under the rates prescribed.

6. It is further objected that the rate-making order impairs the obligation of the contract contained in the company's charter in violation of § 10, Article I of the Federal Constitution. It is alleged in the amended bill that by its charter granted by the act approved March 5,

1850, and the amendments thereto, the appellant was authorized to charge specified maximum rates for transportation over its lines, and that the rates fixed by the Commission's order are less than those which it was thus empowered to maintain.

It is provided by section three of the Bill of Rights contained in the state constitution adopted in 1891, that "every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment." Section 190 of this constitution is as follows: "No corporation in existence at the time of the adoption of this Constitution shall have the benefit of future legislation without first filing in the office of the Secretary of State an acceptance of the provisions of this Constitution."

It is set forth in the amended bill that, by resolution of the board of directors of the appellant, adopted July 11, 1902, it "duly accepted the provisions of the present Constitution of the Commonwealth of Kentucky, ordained September 28, 1891, and the provisions of Chapter 32 of the Kentucky Statutes, being the Act adopted April 5, 1893, with the amendments thereto," and that a copy of this resolution was filed with the Secretary of the State of Kentucky. Chapter 32 of the general statutes is the chapter upon private corporations. One of its provisions, contained in § 573, is that the "provisions of all charters and articles of incorporation, whether granted by special act of the General Assembly or obtained under any general incorporation law, which are inconsistent with the provisions of this chapter concerning similar corporations, to the extent of such conflict, and all powers, privileges or immunities of any such corporation which could not be obtained under the provisions of this chapter, shall stand repealed on September 28, 1897. . . . After the twenty-eighth day of September, 1897, the provisions of this chapter shall apply to all corporations created or organized under the laws of this State, if said provisions

would be applicable to them if organized under this chapter." By another provision of this chapter, in the article relating to railroads (§ 816), a railroad corporation charging more than a just and reasonable rate of compensation is guilty of extortion; the penalty was a fine provided for in § 819. In *Louisville & Nashville R. R. Co.* v. *Commonwealth*, 99 Kentucky, 132, the Court of Appeals, holding that § 816 was too indefinite, to be sustained as a penal statute, concluded its opinion by saying: "It may be observed further, however, that it would seem singular if such a statute, even in all respects valid, could be enforced against a carrier whose rates, as fixed in its charter, are in excess of the rates alleged to be excessive in the indictment. And this, not because such rates are secured by an irrepealable contract, a matter not now considered, but simply because they at least remain the legal rates until changed by law."

It was after the decision in this case that the act of March 10, 1900, was passed, empowering the Railroad Commission to fix rates.

The amended bill states that, upon the filing of the resolution accepting the provisions of the Constitution, and the provisions of chapter 32 of the general statutes, "thereby and thereafter the said contract (with respect to the maximum freight and passenger rates it is entitled to charge and collect on its said lines of railroad) between complainant and the Commonwealth of Kentucky became and is now no longer irrevocable or irrepealable"; but, it is averred that "nevertheless, said contract remains intact and has never been revoked or repealed by any act of the Legislature," and that its obligation was in full force and effect at the time the rate order was made (August 10, 1910). That is, it is insisted that § 573 of the statutes, above quoted, is not applicable for the reason that on April 5, 1893, when the statute, of which this provision was a part, was approved, and also on Septem-

ber 28, 1897, when the repeal provided for in that statute was to take effect, the appellant's charter was not subject to repeal or amendment and that it did not become so subject until 1902. It is also contended that the act authorizing the Commission to fix rates does not apply because that was passed two years before the appellant filed its resolution; in other words, that its contract contained in its charter is still in force because the legislature has not enacted a repealing or amending provision since the resolution was filed.

We do not find it necessary to review all the questions that are suggested. Apart from other considerations, it is manifest that the statute of March 10, 1900, was a continuing authority to the Railroad Commission. The order of the Railroad Commission in fixing rates was a legislative act, under its delegated power. It had "the same force as if made by the legislature." *Grand Trunk Ry. Co.* v. *Indiana Railroad Commission*, 221 U. S. 400, 403. It is for this reason that it is a "law" passed by the State, within the meaning of the contract clause. *New Orleans Water Works Co.* v. *Louisiana Sugar Co.*, 125 U. S. 18, 31; *St. Paul Gas Light Co.* v. *St. Paul*, 181 U. S. 142, 148; *Northern Pacific Ry. Co.* v. *Duluth*, 208 U. S. 583, 590; *Grand Trunk Ry. Co.* v. *Indiana Railroad Commission, supra; Ross* v. *Oregon*, 227 U. S. 150, 163. As it had full legislative effect, the appellant could not assert against its operation the provision of a contract which had previously become subject to legislative alteration. (*Missouri Pacific Ry. Co.* v. *Kansas*, 216 U. S. 262, 274, 275.) Upon the filing of the resolution, the charter provision as to the maximum rates therein specified ceased to be an obstacle, if it had been such before, to the exercise by the State of its rate-making power.

7. The remaining questions require only a brief mention. The penalty provisions of the statute in question are challenged upon the ground that they violate the

provisions of the Fourteenth Amendment. But, as already stated, these provisions are separable. It is also objected that the order of the Commission constitutes an unwarrantable interference with, and a regulation of, interstate commerce. The questions thus raised cannot be distinguished from those which were considered and decided in *The Minnesota Rate Cases*, 230 U. S. 352.

*Second.* The order for reparation.

This order was not made under the statute of March 10, 1900, authorizing the Commission to fix rates. It is conceded on behalf of the appellees that if the Commission was not authorized by § 821 or 829 of the Kentucky statutes to award reparation, it had no authority whatever for that purpose. Section 821 provides that it shall be the duty of the Railroad Commissioners to see that the laws relating to railroads are faithfully executed and to exercise a general supervision over the railroads of the State. Section 829 authorizes the Commission to "hear and determine complaints" under §§ 816, 817 and 818, to the provisions of which we have already referred. It provides that such complaints shall be in writing, that the company complained of shall have notice of hearing, that the Commission shall hear and reduce to writing all the evidence adduced and that it shall render such award as may be proper. If the award be not satisfied within ten days, the chairman of the Commission is to file a copy of it and the evidence heard, in the office of the clerk of the proper circuit court, whereupon it is to be docketed for trial and summons is to be issued, as in other cases, requiring the party against whom the award has been made to show cause why it should not be satisfied. If the party fails to appear, judgment is to be rendered by default, and, if a trial is demanded, the case is to be tried as other ordinary cases, except that no evidence is to be introduced by either party save that heard before the Commission, unless the court shall be satisfied by sworn testimony that

it could not have been produced before the Commission by the exercise of reasonable diligence.

It thus appears that the two proceedings, though they were conducted at the same time, were distinct in their nature. The one resulted in a legislative rule for the future; in the other, there was an award of specific sums of money to particular persons upon the basis of past transactions and this award, according to the provisions of the statute, on being filed could be enforced by proceedings in the courts of the State. The persons in whose favor the award was made were not parties to the suit, and we think that the court was right in declining to determine its validity.

The order denying the application for injunction is

*Affirmed.*