## Southern Railway Company in Kentucky v. Frankfort Distillery Company et al.

## Frankfort Distillery Company et al. v. Southern Railway Company in Kentucky.

(Decided March 18, 1930.)

772

EDWARD P. HUMPHREY, MARVIN H. TAYLOR and HUMPHREY, CRAWFORD & MIDDLETON for Southern Railway Company.

THOMAS C. MAPOTHER for Frankfort Distillery and others.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

The Frankfort Distillery Company and others filed complaint with the Railroad Commission of Kentucky, seeking an order of reparation for $13,744 claimed to have been collected from them by the appellant, Southern Railway Company in Kentucky, in excess of reasonable rates on 78 cars of whisky shipped from a distillery at Harrodsburg to a concentration warehouse in Louisville, in the year 1925. It was purely an intrastate shipment. The rate charged was 62 cents per 100 pounds, which the complainants alleged was unreasonable and extortionate and charged in violation of the provisions of section 816 of the Statutes, to the extent that it exceeded 12½ cents per hundred pounds in wood and 22½ cents in glass. Upon the hearing, however, a rate of 31 cents was contended for as reasonable.

The carrier denied that the rate was unreasonable or excessive, and alleged that any award made in the premises would be in violation of its rights under the due process and equal protection provisions of the Constitution of the United States.

After a hearing, the commission awarded reparation in the sum of $4,555.90, being the sum collected in excess of rates of 43½ cents on shipments in barrels, and 53½ cents on shipments in glass bottles.

In accordance with the provisions of section 829 of the Statutes, a copy of the award and transcript of evidence were filed in the Jefferson circuit court. There the railway company by answer denied the existence of each fact found by the commission, and again sought refuge under the constitutional provisions referred to. The shipper also filed in the court a petition asking judgment not only for the amount awarded by the commission, but for additional sums which had been disallowed by that

body. The circuit court dismissed this petition but gave judgment against the carrier in the amount awarded by the commission. From the respective adverse portions of the judgment each party prosecutes an appeal, but upon the same record.

A common-law action lies to recover sums charged in excess of schedule rates, and no prior application to the Railroad Commission or other body is necessary. But where the complaint is that the schedule rates which have been charged are extortionate, the shipper must first appeal to the commission which is empowered by law to determine the reasonableness of the rates, the common-law remedy for recovery having been abrogated by the Interstate Commerce Commission Act (49 USCA sec. 1 et seq.) covering interstate shipments (10 C. J. 439), and by our statutes relating to the Railroad Commission in intrastate shipments. I. C. Railway Company v. Paducah Brewery Company, 157 Ky. 357, 163 S. W. 239.

The Railroad Commission is a constitutional administrative body (section 209, Constitution of Kentucky), exercising quasi judicial functions, but without judicial power. The efficacy of its awards is dependent upon the judgment of a court of competent jurisdiction. The constitutionality of the statutes relating to its powers in respect to restitution of amounts wrongfully collected or excessive charges, and the methods of procedure for enforcing its decisions have been sustained by this court in I. C. Ry. Company v. Paducah Brewery Company, supra; and L. & N. R. R. Co. v. Greenbrier Distillery Company, 170 Ky. 775, 187 S. W. 296, and by the Supreme Court of the United States in L. & N. R. Co. v. Garrett, 231 U. S. 298, 34 S. Ct. 48, 58 L. Ed. 229; L. & N. R. Co. v. Finn, 235 U. S. 601, 35 S. Ct. 146, 150, 59 L. Ed. 379, and perhaps others.

Section 816, Kentucky Statutes, defines extortion, and section 829 prescribes the procedure before the Railroad Commission and the court for securing redress. Sections 201g-6, and 201g-11, are to the same effect. It is therein provided that after the filing of the award and transcript of evidence heard by the commission in the court, summons shall issue. If the party summoned shall fail to appear default judgment may be entered; and further, "if a trial is demanded the case shall be tried in all respects as other ordinary cases (in which the same amount is involved), except that no evidence shall be introduced by either party except that heard by the com-

mission except such as the court shall be satisfied by sworn testimony could not have been produced before the commission by the exercise of reasonable diligence; the judgment and proceedings thereon shall be the same as in other ordinary cases.''

A distinction is attempted to be drawn by counsel for the railway company between the establishment of rates to be charged in the future and an award of reparation based on past charges. It is submitted that the former is a legislative act because it prescribes a rule of conduct for the future, while the latter is a judicial function and the findings of the commission must be ignored by the courts. The granting of an order of restitution quite obviously is dependent upon the determination of the reasonableness of the rates which have been charged, and there is no difference in the commission's power or in the methods of procedure to be found in the statute. The power to fix rates for the future within limits is not questioned, but it is claimed there is no retroactive power, at least where no attempt is made to establish or promulgate the new rate as a future charge. The commission did not undertake to declare that the rate found by it to be reasonable should apply on any shipments other than those involved in the hearing, as the evidence showed that the distillery had been dismantled and all the whisky removed and that there would be no future shipments for its application. In the cases above cited, the matter of reparation was involved and the validity of the statutes under which this proceeding has been had was sustained, as well as the power of the commission to award reparation only without establishing rates for the future.

As to the burden of proof in these proceedings, there appears no difference of opinion between counsel that it rested upon the complainants in the hearing before the commission. But as to whom the burden is upon before the court, and as to the consideration to be given the award of the commisson, are the subjects of debate.

It is contended by the railway company that the rule as to the burden of proof (section 526, Civil Code of Practice) obtains both in the hearing before the Railroad Commission and in the court; and it is especially argued that the trial in that tribunal must be de novo, else the carrier will be deprived of its property without due process of law.

The case is undoubtedly to be heard by the court anew, but on the evidence submitted to the Railroad Commission upon which it has made its findings. Upon a proper showing additional evidence may, in the discretion of the judge, be heard as is provided in the statute, and although this right to introduce evidence before the court was claimed in the pleadings, the carrier in this case in fact offered no additional evidence, and under accepted rules, the failure to offer such evidence must be deemed to be a waiver of whatever right it had in this regard. As to the restrictions upon the introduction of evidence, we may enter as an observation these words of the Supreme Court in L. & N. R. Co. v. Finn, supra:

> "As to its right to adduce evidence before the court in the action to enforce payment of the award, its complaint in this regard seems to us at least premature. There is nothing to show that it has or could have any defense to the payment of the reparation that it has not already either interposed or waived in the proceeding before the Commission, or to show that it has any evidence to be adduced before the court that it would be prevented from introducing by the effect of the restriction contained in sec. 829."

The Legislature in 1922 (Session Acts, chapter 102, page 268, section 7, now incorporated in our statutes as section 201g-7), provides, as to hearings concerning rates increased after the passage of the act, that the burden of showing the rate to be reasonable shall be upon the carrier, and in providing for the judicial hearing on claims for excessive demurrage charges, the act provides methods quite similar to those prescribed in section 829 of the Statutes, with the addition that "the court shall enter judgment enforcing the order or award of the commission unless the same be contrary to the law and the evidence." The rates involved in this case, however, are not covered by this statute for they were established in January, 1920. So the question must be decided independently of that act.

The courts ordinarily should, and do, in deference to the governmental functions conferred by law upon the commission, and in obedience to the statutory demand for a liberal construction (section 460, Statutes), sustain their findings, which are solutions of mixed questions of law and fact. Indeed, in the absence of a claim showing

that the rate so fixed is confiscatory and, therefore, deprives the carrier of its property without due process of law, it may be doubted if the courts have power to set aside the decision of the tribunal created by the Constitution and empowered by the Legislature to determine primarily the reasonableness of rates, and to attempt the correction of inequality and injustice therein. The burden, therefore, rests on the carrier to show the courts that the finding of the commission is plainly at variance with the evidence adduced before it, or is contrary to law. Interstate Commerce Commission v. L. & N. Railroad Company, 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431; L. & N. R. Co. v. Garrett, 231 U. S. 298, 34 S. Ct. 48, 54, 58 L. Ed. 229. In the latter opinion it is said:

"It may be assumed that the statute of Kentucky forbade arbitrary action; it required a hearing, the consideration of the relevant statements, evidence, and arguments submitted, and a determination by the commission whether the existing rates were excessive. But, on these conditions being fulfilled, the questions of fact which might arise as to the reasonableness of the existing rates in the consideration preliminary to legislative action would not become, as such, judicial questions to be re-examined by the courts. The appropriate questions for the courts would be whether the commission acted within the authority duly conferred by the legislature, and also, so far as the amount of compensation permitted by the prescribed rates is concerned, whether the commission went beyond the domain of the state's legislative power and violated the constitutional rights of property by imposing confiscatory requirements."

Since an award of reparation is necessarily dependent upon the establishment of the unreasonableness of the rate which was charged the shipper, the same rule naturally applies in matters of claims for reparation. L. & N. R. Co. v. Greenbrier Distillery Company, supra.

In short, and in fine, all the carrier's arguments in support of its assertions in this case as to the invasion of its constitutional rights, and the validity of the procedure, encounter opposition and effective adverse answer by this court in the Greenbrier Distillery Company case.

The case before us then resolved itself into the solution of the question whether the trial court is correct in its judgment that the finding of the commission, respecting the unreasonableness of the rates charged the shippers, and its order of reparation, were not contrary to law.

There is no precise formula for determining with fine accuracy the point of reasonableness of freight rates. There are many factors entering into the consideration. One of these is competition, though a monopoly does not permit a carrier to disregard the right of the shippers. and exact more than what the services rendered are reasonably worth. It appears from the evidence that at one time the carload rate on whisky from Tyrone, a point nearby, to Louisville, was fixed as low as 10 cents per hundred pounds because of river competition and other factors, and this rate was allowed shippers from Harrodsburg. This accommodation to the situation seems to have been abandoned, and the rates increased and lowered from time to time. Before February 29, 1920, commodity rates of 12½ cents for shipments in wood or barrels and 22½ cents in glass or cases were in effect. With the advent of the prohibition of the legal manufacture of whisky, it was classified as first-class freight, and on February 29, 1920 (when control of the transportation system of the country was released by the United States Railroad Administration), the rate of 62 cents was established, which was an increase of about 500 per cent. over that existing before by reason of competition, volume of traffic, lower operating expenses, and the like. If the previous rates had been or would be so low as to be unremunerative, the carrier of course had the right, without any presumption of wrong, to increase the rates to meet the changed conditions, provided that increase was reasonable. 10 C. J. 406. But when called upon, the carrier should give good reason for making the change. Interstate Commerce Commission v. Chicago Great Western Railroad Company, 209 U. S. 108, 28 S. Ct. 493, 52 L. Ed. 705. If those increased rates charged these shippers were unreasonable and extortionate, they were unlawful; and being unlawful, the shippers have the right to recover to the extent of their illegality. I. C. Railroad Company v. Paducah Brewery Company, supra.

The evidence introduced by the shippers was in substance the extraordinary and sudden increase in the rates; depreciation in value of the commodity by reason

of legal restrictions on its sale; that there were no changed conditions connected with its transportation; and the fact the carrier had accepted as reasonable a rate of 31 cents fixed by the commission on similar traffic in the same territory over a haul three miles longer.

The substantial reasons assigned for the great increase were: The necessity for furnishing armed guards during transit; a discontinuance of accepting the shippers' weight and count and having its own regular employees check the loading; comparison with rates on other commodities and on whisky in other communities and states and on other railroads; the cessation of shipments of the commodity and of materials to Harrodsburg entering into the manufacture of whisky.

While the latter element should, perhaps, be taken into consideration, it is not to be presumed that those shipments were moved at noncompensable rates, voluntarily established.

It does not appear that the checking in of the freight added to the expense of operation, as this was done by regular employees as a part of their general duties, and it is not suggested that their salaries or wages increased because of this work.

It was shown in the evidence by the appellant that the cost of guarding these shipments was less than $20 a car, or an equivalent of about 5 cents per 100 pounds. Considering this cost, there yet remains the rate of 57 cents as compared with rates of 12½ and 22½ cents.

We are not much impressed with the comparison of these rates with those obtaining in foreign states and on different commodities. But comparison of prevailing rates under substantially similar conditions on the same road is of probative value, for the question of reasonableness is in a degree a relative one. L. & N. R. Co. v. U. S., 238 U. S. 1-12, 35 S. Ct. 696, 59 L. Ed. 1177. A rate of 31 cents on shipments of whisky from Lexington to Louisville, over substantially the same mileage, and under same conditions, two years before the hearing of the instant case, had been established by the commission and acquiesced in by this carrier. This raises the presumption that such rate was reasonable. L. & N. R. Co. v. Kentucky R. R. Commission (D. C.) 214 F. 465, affirmed by the Supreme Court in L. & N. R. Co. v. Finn, etc., 235 U. S. 601, 35 S. Ct. 146, 59 L. Ed. 379. This rule applies with striking emphasis with respect to the extraordinary increase of practically 500 per cent.

While density of traffic is an important factor, it does not appear that the volume of freight transported over the line involved was less than before, except there were no raw materials moving to the distilleries.

The evidence so briefly reviewed here, and the reasonable deductions therefrom, seemed to the commission to justify an increase in the rates of about 250 per cent. but not 500 per cent. as made by the carrier. And likewise to warrant the conclusion of the trial court that the finding and award of the commission was not arbitrary or contrary to the law. It was and is not here made to appear, that the rates of 43½ and 53½ cents fixed by the commission are confiscatory. Indeed, there was no factual evidence offered that any rate less than that charged these shippers would be confiscatory, nor even an expression of opinion to that effect by the experts introduced in behalf of the carrier. They merely declared that it was reasonable.

In I. C. C. v. L. & N. R. R. Co., 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431, the Supreme Court declared (as stated in the syllabus):

"The value of evidence in rate proceedings varies, and the weight to be given to it is peculiarly for the body experienced in regard to rates and familiar with the intricacies of rate-making."

That seems to us a sound doctrine. In L. & N. R. Co. v. Finn, supra, it was held that where the carrier had voluntarily maintained for several years comparatively low special rates on distillery supplies to encourage the industry and had then withdrawn them, evidence of that fact was sufficient to support an order of the Railroad Commission of Kentucky re-establishing such rates.

This case was tried as a common-law action with the jury waived and the law and facts submitted to the judge. He found that the sums were charged and collected as stated, and that there had been no payment or refund made by the carrier to the shippers; that whether the finding of the commission was or was not prima facie correct, a reasonable rate for moving the freight was 43½ cents per 100 pounds on shipments in barrels, and 53½ cents on shipments in glass, as fixed by the commission; that so far as the 62 cent rate charged exceeded those figures, it was unreasonable, and that the reparation to that extent awarded by the Railroad Commission

is reasonable and supported by and in accordance with the evidence. This decision of the court under our practice is to be considered as the verdict of a properly instructed jury, and this court is of the opinion that the rights of the railway company have been maintained and that the judgment against it should be, and it is affirmed.

As heretofore stated, the shippers filed in the circuit court a petition seeking a judgment for the difference between the amount claimed by them, and the sum awarded by the commission. This petition was dismissed and an appeal from that judgment has been brought to this court on the same record. This procedure has been followed, they say, because of the contention of the railway company that the trial in the circuit court should have been de novo and wholly independent of the action of the Railroad Commission. It is argued that if the railway company's contention should be sustained, which they oppose, then the shippers had the right also to be heard with respect to their claims which were disallowed. The statute makes no provision for the submission to the court of an order of the commission denying reparation either in whole or in part. Under the statute the shipper is without remedy when the decision of the commission is adverse to him.

The judgment on this appeal is correct, and it is therefore also affirmed.