# Hurt et al. v. Bank of Commerce et al.

(Decided October 31, 1930.)

O. H. POLLARD and S. MONROE NICKELL for appellants.

HENRY L. SPENCER, A. F. BYRD and FRANK GINOCCHIO for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On June 4, 1926, the appellants, A. C. Hurt and Fred P. Hurt, executed to the appellee Hargis Commercial Bank & Trust Company their promissory note for $5,924, due six months after date with interest thereon at the rate of 6 per cent. per annum from maturity until paid. Before maturity the Hargis Commercial Bank & Trust Company sold and assigned the note to the appellee Bank of Commerce, of Lexington, Ky. The note was not paid at maturity, and the Bank of Commerce sued appellants in the Breathitt circuit court.

Appellants filed an answer and cross-petition in which the Hargis Commercial Bank & Trust Company was made a party. In this pleading appellants denied that the Bank of Commerce was a holder in due course of the note and alleged that it had been paid before it was assigned by the Hargis Commercial Bank & Trust Company to the Bank of Commerce, and they prayed judgment against the Hargis Commercial Bank & Trust Company for the amount of the note, with interest, in the event the Bank of Commerce was adjudged to be the holder in due course of the note. The Hargis Commercial Bank & Trust Company answered traversing the allegations of the cross-petition. By agreement of the

parties a jury was waived and the law and facts were submitted to the court. The circuit court rendered judgment in favor of the appellee Bank of Commerce for the amount of the note with interest from December 4, 1926, and dismissed appellants' cross-petition, and they have appealed.

The witnesses were examined orally before the trial judge. His finding of fact is to be considered as the verdict of a properly instructed jury and not to be disturbed unless found to be palpably against the weight of the evidence. Southern Railway Co. in Kentucky v. Frankfort Distillery Co., 233 Ky. 771, 26 S. W. (2d) 1025; Greensburg Deposit Bank v. Commonwealth, 230 Ky. 798, 20 S. W. (2d) 979; Falls City Plumbing Supplies Co. v. Jake's Foundry Co., 223 Ky. 420, 3 S. W. (2d) 1071. It was the province of the trial judge to pass upon the credibility of the witnesses and the weight to be attached to their testimony, and if his finding on the facts is supported by substantial, competent evidence it must be upheld.

Prior to 1925 the Jackson Block Coal Company, a corporation, owned and operated in Breathitt county a large coal mine. E. L. Gambill and appellant A. C. Hurt owned the majority of the stock in this company. The company was forced into bankruptcy on April 11, 1925, and Gambill was elected trustee of the bankrupt estate by the creditors. The Jackson Block Coal Company owed the Hargis Commercial Bank & Trust Company approximately $29,000, which was secured by a mortgage on the mine and mining equipment of the company. This debt was adjudged to be a preferred claim, and when the property of the bankrupt was sold the Hargis Commercial Bank & Trust Company became the purchaser for the amount of its debt. Thereafter and until September 21, 1926, the bank operated the mine, when it conveyed it to the Jackson Real Estate & Mining Company for the sum of $40,000, evidenced by eight promissory notes of $5,000 each.

The stockholders of the Jackson Real Estate & Mining Company were A. H. Hargis, president of the Hargis Commercial Bank & Trust Company, Elbert Hargis, his brother, E. I. Dawkins, cashier of the bank, and the appellant A. C. Hurt. It is clear from the evidence that the Jackson Real Estate & Mining Company was organized for the purpose of taking over the mining property and to relieve the bank of any liability growing out of the

operation of the mine, and to substitute a new indebtedness for the old. In arriving at the consideration to be paid by the newly organized company, the old indebtedness to the bank of the Jackson Block Coal Company and the individual indebtedness of the appellant A. C. Hurt to the bank were included. Hurt had executed the note here involved for $5,924, which was the last of a number of renewals of a note originally executed for $5,000 to which the interest had been added from time to time. The total indebtedness to the bank, including the Hurt note, amounted to $38,877.94, and, in order to square the sale price to the Jackson Real Estate & Mining Company and the old indebtedness to the bank of the Jackson Block Coal Company and the Hurt note, one of the $5,000 notes executed by the Jackson Real Estate & Mining Company was credited with a payment of $1,122.06.

On October 25, 1926, the Jackson Real Estate & Mining Company sold the mining property to R. J. McLin and others, who later organized a corporation known as the Jackson Fourseam Mining Company, and the property was deeded to this company. The consideration agreed upon and paid to the Jackson Real Estate & Mining Company was $44,416.24. R. J. McLin, one of the purchasers, testified that he closed the transaction with A. H. Hargis, president of the Jackson Real Estate & Mining Company, and that Hargis gave him a written statement before the sale was made and told him "that is what it will take to buy it." He produced the statement which he claimed Hargis gave him, which is as follows:

STATEMENT OF NOTES, OVERDRAFTS AND ACCOUNTS

| | |
|---|---:|
| Jackson Bloc O. D. | $ 1,443.24 |
| Jackson Real Estate and Mining Company | 1,758.66 |
| A. C. Hurt | 124.01 |
| W. E. Strong | 18.62 |
| Interest on O. D. | 427.00 |
| A. H. Hargis | 15.30 |
| Notes of Jackson Real Estate & Mining Co. | 38,877.94 |
| Interest on same | 194.39 |
| Note | 254.71 |
| Note | 693.43 |
| Note | 608.94 |
| Total | $44,416.24 |

The notes for $254.71, $693.43, and $608.94, listed in the statement, were notes which had been executed to the Hargis Commercial Bank & Trust Company and on which E. L. Gambill was principal. The sureties on these notes are solvent and the notes are collectible, but McLin testified that Hargis insisted that they should be included in the transaction and that the bank would assign them to the purchasers of the mining property, which it did.

Appellant A. C. Hurt testified that he entered into an agreement with A. H. Hargis, president of the Hargis Commercial Bank & Trust Company, whereby it was agreed that if he would procure a purchaser for the mining property then owned by the bank at a price that would save the bank from loss growing out of all transactions relative to the coal mining property, the bank would treat his note for $5,924 as paid and deliver it to him, and that it would also treat as paid the Gambill notes aggregating $1,557.08. He testified that he procured R. J. McLin as a purchaser for the property, and it is appellants' contention that the note here involved was thereupon satisfied and should have been canceled and delivered to A. C. Hurt.

R. J. McLin testified that appellant A. C. Hurt tried to interest him in the purchase of the mine, but it appears from his testimony that Hurt's efforts to interest him were before the property was sold in the bankruptcy proceeding and shortly thereafter when the coal mining business was depressed and there was no market for such property. He admits that Hurt was not present during any of the negotiations leading up to the sale, and that all the negotiations were with A. H. Hargis, who was president both of the bank and the Jackson Real Estate & Mining Company. While the bank owned the mine, during which time Hurt claims the alleged agreement was made, coal was selling for $1.50 per ton and the mine could not be operated at a profit; but just before the sale to McLin and his associates the price of coal advanced to $4.50 or more per ton, which created a demand for coal mining properties.

A. H. Hargis testified that the note in question had been sold and assigned before maturity to the Bank of Commerce of Lexington, Ky., and that the Hargis Commercial Bank & Trust Company had received for it a valuable consideration. He denied that he had entered into any agreement with appellant A. C. Hurt for the bank of which he was president, whereby the bank was

to surrender the note to Hurt if the latter secured a purchaser for the property who was willing to pay therefor an amount sufficient to save the bank from any loss incident to the indebtedness of the Jackson Block Coal Company. He testified that shortly after the Jackson Real Estate & Mining Company took over the mine the price of coal advanced very rapidly, and at the time the mine was sold to McLin and associates it was being operated at a profit of approximately $500 a day; that he first priced the mine to McLin at $42,000, but before the offer was accepted, added the condition that the purchasers should buy the three Gambill notes, which made the total price for the mine and notes $44,416.24; and that when the sale was consummated these notes were assigned to McLin and his associates.

E. L. Gambill testified that he and appellant A. C. Hurt, after the bankruptcy proceedings, entered into negotiations with A. H. Hargis with a view to repurchasing the mining property, but that Hargis insisted that the indebtedness of Hurt and Gambill to the bank, as well as the indebtednes of the corporation, should be paid before he would convey them the property, and that no agreement was entered into.

The evidence, boiled down, amounts to this: Appellant A. C. Hurt claims that he entered into an agreement with the Hargis Commercial Bank & Trust Company whereby it was to cancel his note for $5,924 provided he found a purchaser for the mining property owned by the Jackson Real Estate & Mining Company, who would pay an amount sufficient to pay to the bank the indebtedness it carried on its books of the Jackson Block Coal Company and its successors, and that he procured such a purchaser. A. H. Hargis denies making such an agreement and states positively that he never agreed, on behalf of the bank, to give Hurt the note in question or any commission or any consideration to sell the mining property. There are a few facts and circumstances tending to support each of these witnesses.

The books of the bank show that the Hurt note was charged off when the notes of the Jackson Real Estate & Mining Company were taken, but it was not marked paid, and the bank apparently treated the obligation as a subsisting one, though not carried on its books as an asset. Some of the witnesses spoke of the Hurt note as having been paid when the bank accepted the notes of the Jackson Real Estate & Mining Company, but what hap-

pened was that these notes were substituted in the bank's note file for the Hurt note and others. The appellants were still obligated to the bank, although the note was charged off as a present asset on its books. If the mine was sold later for a sum sufficient to pay the Jackson Real Estate & Mining Company's notes, it does not follow that the obligation of appellants was thereby extinguished. Even though it be conceded that the amount paid by McLin and his associates was sufficient to cover both the indebtedness to the bank growing out of the original transaction and the Hurt note for $5,924, the Hurt note was not satisfied by the sale in the absence of an agreement to that effect.

The sole question in issue is whether or not such an agreement existed. The trial court found that it did not. Waiving the question argued by appellees as to whether or not A. H. Hargis, president of the bank, had authority to bind the bank, and conceding, for present purposes, that he did have such authority, we are not persuaded that the finding of the trial court on the facts is palpably wrong. On the contrary, we are of the opinion that his conclusion is supported by some substantial, competent evidence.

Wherefore the judgment is affirmed.