LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* FINN AND OTHERS AS RAILROAD COMMISSION OF KENTUCKY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 546.   Argued December 11, 14, 1914.—Decided January 5, 1915.

Where the jurisdiction of a Federal court is invoked because of questions raised under the Federal Constitution it extends to the determination of all questions presented, irrespective of the disposition that may be made of the Federal questions or whether it is necessary to decide them at all.   *Ohio Tax Cases*, 232 U. S. 576.

While the rule applicable to the Interstate Commerce Commission that an order made indisputably contrary to the evidence, or without any evidence, is arbitrary and subject to be set aside, may also be applicable to orders of the Kentucky Railroad Commission, in this case *held*, that there was substantial evidence to support the order establishing rates and the Commission had jurisdiction under the McChord Act to make the order reëstablishing a former rate.

Where the evidence shows that special rates on a particular commodity were voluntarily established and were maintained for many years after the avowed reason for introducing them had ceased to exist, and the carrier's reason for an advance was not because they were inadequate but because they gave rise to discrimination, there is a reasonable inference that the advanced rates are unreasonably high which is sufficient to give jurisdiction to the Kentucky Railroad Commission under the McChord Act to make an order reëstablishing the original rates and to support the conclusion that such rates were remunerative and should be reëstablished.

Where, in a proceeding before a state Railroad Commission, complaining shippers specified the amount of extortionate charges for which

reparation was prayed and the carrier admitted the rates had been charged and denied liability for reparation solely on the ground that the rates were reasonable, and there was evidence to support the charges that the rates were extortionate, and the record does not show that the carriers were denied an opportunity to introduce evidence, this court will not declare that an order of reparation was contrary to the due process provision of the Fourteenth Amendment, either because of lack of evidence on which to base the amounts ordered to be paid or because, under the statutory procedure, there was no formal issue, or because the statute does not provide for compulsory production of evidence either before the Commission or in any subsequent trial before the court.

This court does not pass upon moot questions, and one seeking to strike down a state statute as unconstitutional must show that he is within the class with respect to whom it is unconstitutional, and that he has been injured by the unconstitutional feature.

Where the record does not show that the party complaining suffered for lack of compulsory process or that he will be prevented in a subsequent trial from producing evidence, he cannot be heard to object to a statute as unconstitutional because it does not provide for compulsory process or contains restrictions on admission of evidence.

214 Fed. Rep. 465, affirmed.

THE facts, which involve the validity of orders of the Kentucky Railroad Commission establishing rates and awarding reparation and the constitutionality of the statute under which the orders were made, are stated in the opinion.

*Mr. Edward S. Jouett* and *Mr. William A. Colston*, with whom *Mr. Henry L. Stone* was on the brief, for appellant.

*Mr. Edward W. Hines*, with whom *Mr. J. V. Norman*, *Mr. James Garnett*, Attorney General of the State of Kentucky, and *Mr. Charles C. McChord* were on the brief, for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

This case was here on a former occasion (*Louisville & Nashville R. R.* v. *Garrett*, 231 U. S. 298), when an order

denying a motion for an interlocutory injunction was affirmed. The suit was brought by the Railroad Company to enjoin the enforcement of two orders made August 10, 1910, by the Railroad Commission of Kentucky, one of which prescribed maximum rates of freight upon certain intrastate traffic, and the other awarded specified amounts in reparation for payments previously exacted by the carrier for freight transportation in excess of the rates thus established by the Commission as reasonable. One of the grounds of attack upon the rate order was that the Commission had acted arbitrarily, in that there was no evidence before it tending to establish that the rates which the company had maintained were unreasonable. Upon the former appeal we held that since it appeared that there had been a hearing before the Commission with evidence adduced on each side, and since this was not produced before the court, the general allegations of the bill respecting the effect of the evidence, and the statements contained in the affidavits submitted upon the application for injunction, were insufficient to justify the court in enjoining the rates upon the ground that the Commission either had denied the hearing which the statute contemplated, or by its arbitrary action had been guilty of an abuse of power. With respect to the reparation order we sustained the action of the court below in declining to determine its validity, upon the ground that the persons in whose favor the award was made had not been brought in as parties.

After our decision, appellant filed an amended and supplemental bill bringing in as defendants the parties in whose favor reparation was awarded, stating with more particularity the grounds upon which that order was attacked, and, with respect to the rate order, setting out as an exhibit a transcript of the evidence introduced before the Commission. Upon this amended and supplemental bill appellant again moved for an interlocutory injunction.

The motion was heard before three judges, under § 266, Judicial Code (36 Stat. 1162, c. 231), the application for injunction was denied (214 Fed. Rep. 465), and the case comes here by direct appeal taken pursuant to the provisions of the same section.

The jurisdiction of the Federal court was invoked because of questions raised under the Constitution of the United States, and not because of diversity of citizenship; but it extends, of course, to the determination of all questions presented, irrespective of the disposition that may be made of the Federal questions, or whether it is necessary to decide them at all. *Ohio Tax Cases*, 232 U. S. 576, 587, and cases cited.

The action of the Commission was based upon Kentucky Statutes (Carroll): § 816, defining what shall be deemed extortion by a railroad corporation in charging toll or compensation for intra-state transportation; § 820a (the "McChord Act"), authorizing the Commission, upon complaint made against a railroad company for charging extortionate freight or passenger rates, to hear the matter and, if it determines that the company has been guilty of extortion, then to establish a just and reasonable rate for services thereafter to be rendered; and § 829, authorizing the Commission to hear and determine complaints under § 816 and to render such award as may be proper.

It appears that for many years prior to March 25, 1910, the railroad company had voluntarily maintained special rates for the transportation of corn, rye, barley, and malt, and empty barrels, boxes, etc., from three points of origin upon the Ohio River—Louisville, Covington, and Newport—to points of destination in the interior of the State; these rates being allowed only to owners of distilleries, when the commodities in question were used as raw materials or supplies. On the date mentioned, the carrier withdrew these special rates and substituted what are

described as the "standard rates," being the same that had been theretofore charged to others than distillers. Thereupon numerous distillery companies complained to the Commission, insisting that the new rates were exorbitant and that the former rates were just and reasonable. After a hearing the Commission sustained the contention of the petitioners and established the maximum rates now in question, these being the same as the special rates, which, prior to March 25, 1910, the carrier had given to the distillery companies; but by the Commission's order they were made to apply to the commodities mentioned, without regard to the use that was to be made of them.

The McChord Act, under which the rate order was made, is set forth in *Siler* v. *Louisville & Nashville R. R.*, 213 U. S. 175, 178. It provides for notice to the carrier, stating the nature of the complaint or matter to be investigated, and the time and place of hearing it, and requires the Commission to hear such statements, argument, or evidence offered by the parties as the Commission may deem relevant. Section 829 likewise requires notice of the hearing to be given to the company; the evidence is to be reduced to writing together with the award, and they are to be filed in the office of the clerk of a designated court, and a summons is to be issued requiring the company to appear and show cause why the award should not be satisfied. If the parties fail to appear, judgment is rendered by default; but if trial is demanded, the case is to be tried as ordinary cases are, except that no evidence shall be introduced by either party other than that heard by the Commission or such as the court shall be satisfied could not have been produced before the Commission by the exercise of reasonable diligence. The judgment and proceedings thereon are to be the same as in ordinary cases. Since the case was here before, the Court of Appeals of Kentucky, in *Illinois Central R. R.* v. *Paducah*

*Brewery Co.*, 157 Kentucky, 357, has passed upon § 829, upholding its validity under the state and Federal constitutions, and construing it as authorizing the Commission to award reparation in money.

The contentions now made by appellants are reducible to two; first, that the rate order is invalid because not supported by substantial evidence; and, second, that the reparation order is invalid for the same reason, and also because the statute pursuant to which it was made violates the "due process" clause of the Fourteenth Amendment.

To deal first with the rate order. In cases arising under the Interstate Commerce Act, the provisions of which contemplate an investigation or inquiry conducted with some formality, followed by a written report and decision as the basis of the orders, it has been repeatedly held by this court that an administrative order made indisputably contrary to the evidence, or without any evidence, must be deemed to be arbitrary, and therefore subject to be set aside. *Int. Com. Comm. v. Union Pacific R. R.*, 222 U. S. 541, 547; *Int. Com. Comm. v. Louis. & Nash. R. R.*, 227 U. S. 88, 91, 92. It is contended that the "due process" provision of the Fourteenth Amendment imposes a like rule of procedure upon the States with respect to their exercise of the legislative power of rate-making.

We find it unnecessary to pass upon this question. The McChord Act, like the Interstate Commerce Act, contemplates that the Commission bases its determination upon the evidence adduced before it; and it may at least be assumed that the rate order must be held invalid unless it was founded upon substantial evidence. But we agree with the court below that there was substantial evidence to support the order. At the hearing, a Mr. Goodwyn was produced by the company, and made a statement of the facts in its behalf—not under oath, but it was received as evidence in behalf of the company—in substance

that the special rates maintained prior to March 25, 1910, had been introduced more than thirty years before in order to encourage the distillery business along the line of the railroad; that the rates were not raised when the business of the distilleries became prosperous, but were continued as long as the railroad company could continue them with justice to itself, that is to say, to the point where prosecution was threatened by the Interstate Commerce Commission for alleged discrimination, and that in order to remove the discrimination the company had raised the rates charged on grain for distillery purposes in order to make them correspond with those charged on grain used for other purposes. These grain rates were the chief bone of contention. There was some other evidence, but not very much, that bore directly upon the question of the reasonableness of the rates; but it should be said that full opportunity was afforded to the railroad company to adduce such evidence as it desired. And since it appeared that the company, long prior to March 25, 1910, had voluntarily established the comparatively low rates upon a substantial part of their traffic, had maintained them for many years after the reason assigned for originally introducing them had ceased to exist, and had then withdrawn them, not upon the ground that they were inadequate, but because they gave rise to discrimination, and in so doing had introduced rates very much greater, it seems to us that the conduct of the carrier, in the absence of some explanation more conclusive than any that was made, was sufficient basis for a reasonable inference that the special rates in force prior to March 25 upon the distillery supplies were reasonable and adequate compensation for that and other similar traffic, and that the rates thereafter charged were unreasonably high to the extent of being extortionate. *Interstate Com. Comm. v. Louis. & Nash. R. R.*, 227 U. S. 88, 99. This was sufficient to give jurisdiction to the Commission under the

McChord  Act,  and  to  support  the  conclusion  that  it
reached.

As to the reparation order, it is further.insisted (a) that
there was no evidence before the Commission to show that
the  several  parties  to  whom  reparation  was  awarded  had
paid  freights  based  upon  the  rates  complained  of,  or  to
show  the  amounts  of  their  payments,  or  to-show  that  the
difference in the freight payments represented damages to
which  they  were  entitled;  and  (b)  that  so  much  of·the
statute  (§ 829)  as  undertakes  to  provide  the  procedure  for
recovering  reparation  is  contrary  to  the  "due  process"
provision  of  the  Fourteenth  Amendment,  because  in  the
proceeding  before  the  Commission  there  is  no  formal  issue
and  no  method  of·requiring  the  production  of  evidence,
while  in  the  subsequent  trial  before  the  court  based  upon
the  Commission's  award  there  is  no  right  to  adduce
evidence  other  than  such  as  was  presented  to  the  Commis-
sion,  unless  the  court  shall  first  be  satisfied  that  the
evidence  is  such  as  could  not· have  been  produced  before
the  Commission  with  the  exercise  of  reasonable  diligence.

From  the  record,  however,  it  appears  that  in  the  peti-
tion filed by the distillers and distillery companies before
the  Commission  it  was  alleged  that  since  March  25, 1910,
each of the petitioners had been subjected to extortionate
charges  collected  from  them  by  the  railroad  company,
and  for  which  an  award  of  reparation  was  prayed;  the
respective  amounts  thus  claimed  being  particularly  spec-
ified.  The answer of the company admitted that the rates
mentioned  had  been  charged,  collected,  and  received  by
it,  but  denied  that  they  were  extortionate,  unjust,  or
unreasonable,  and  upon  this  ground,  and  no  other,  denied
liability  to  make  reparation.   The  transcript  of  the
testimony  taken  before  the  Commission  shows  that  the
several  reparation  claims  were  presented,  and  the· follow-
ing  colloquy  occurred  respecting  them:  "Mr.  McChord
(counsel for petitioners): 'Is there any question made as to

the amount of those claims?' Mr. Goodwyn: 'We never checked them.' Mr. Dearing (counsel for the railroad company): 'My idea is that the Commission can easily check them, and you and I can check them if we come to the position that they are entitled to the reparation.' Mr. McChord: 'You deny it all?' Mr. Dearing: 'Yes.' Mr. McChord: 'I will put all these claims in as exhibits. Some of these have not been made up by the complainants, and we will want to fill them in later.' Mr. Dearing: 'That will be all right.' Mr. McChord: 'Shall I put them in now?' Mr. Siler: 'Yes, or at any time.'" In short, the record shows that the only question made respecting the reparation claims was the general contention that the rates charged by the company were in fact not unreasonable or extortionate; and that it was in effect conceded that the particular amounts claimed were proper to be awarded as reparation, if the rates charged were determined to be unreasonable and extortionate.

We have already seen that there was evidence to support the Commission's affirmative finding upon the latter point. And this leaves no basis, as we think, for appellant's present attack upon § 829 as repugnant to the due process provision of the Fourteenth Amendment. In the proceeding before the Commission there were pleadings sufficiently formal, and appellant was permitted to raise such issues and introduce such evidence as it desired. There is nothing to show that it suffered for lack of compulsory process against witnesses. As to its right to adduce evidence before the court in the action to enforce payment of the award, its complaint in this regard seems to us at least premature. There is nothing to show that it has or could have any defence to the payment of the reparation that it has not already either interposed or waived in the proceeding before the Commission, or to show that it has any evidence to be adduced before the court that it would be prevented from introducing by the

effect of the restriction contained in § 829. This court does not sit to pass upon moot questions; and, as has been often pointed out, it is incumbent upon one who seeks an adjudication that a state statute is repugnant to the Federal Constitution to show that he is within the class with respect to whom it is unconstitutional, and that the alleged unconstitutional feature injures him, and so operates as to deprive him of rights protected by the Constitution. *Hatch* v. *Reardon*, 204 U. S. 152, 161; *Southern Railway* v. *King*, 217 U. S. 524, 534; *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, 550; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531, 544.

The order of the District Court should be, and it is

*Affirmed.*