APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 30, 1914, which annulled, on certiorari, a determination of the public service commission ordering a reduction of certain local rates of fare.

The facts, so far as material, are stated in the opinion.

*Ledyard P. Hale* for appellant. The error of the court as to burden of proof was substantial and not technical; likewise its error as to the presumption to be drawn from long-continued voluntary collection of a rate lower than that ordered by the commission. It went to the whole character of the review which the commission's order was subjected to by the court. (*S. & N. A. R. Co.* v. *R. R. Comm.*, 210 Fed. Rep. 465.)

*Max Cohen* for James T. Lennon, individually and as mayor of the city of Yonkers, intervening. The "burden of proof" rule was not violated in the procedure of the public service commission. (*Coffin* v. *Grand Rapids Hydraulic Co.*, 136 N. Y. 657.)

*Joseph S. Wood* for Edwin W. Fiske individually and as mayor of the city of Mount Vernon, intervening.

*Robert E. Whalen* and *Charles C. Paulding* for respondent. The commission erred in holding that the burden of proof was on the railroad company to justify the reasonableness of its advance in rates. (*I. C. Comm.* v. *C. G. W. Ry. Co.*, 209 U. S. 108; *L. & N. R. R. Co.* v. *I. C. Comm.*, 195 Fed. Rep. 541; *I. C. Comm.* v. *U. P. R. R. Co.*, 222 U. S. 541.)

HISCOCK, J.   The respondent, The New York Central and Hudson River Railroad Company, made two increases in commutation rates charged by it to certain suburban points, one in 1907 and the second in 1910. Four pro-

ceedings were instituted by various parties to have it declared by the public service commission that these increased rates were not justified and were unreasonable and to have them reduced. The proceedings failed so far as pertained to the increase in rates adopted in 1907, but prevailed as to the increase adopted in 1910, these latter rates being reduced to those which prevailed during the years 1907–1910. A writ of certiorari brought the proceedings and order of the commission before the Appellate Division for review and that court by a divided vote reversed the order of the commission reducing respondent's rates established as above stated and the correctness of this order of reversal is now submitted to us.

In deciding the appeal we find it necessary to decide only one question and in the decision of this we reach the same conclusions which were well expressed in the prevailing opinion of Mr. Justice LYON at the Appellate Division.

The proceedings which were instituted before the commission as above stated were heard together. So far as concerns the question now to be discussed all of them presented it in substantially identical form. It was in substance alleged in each petition that certain rates had been adopted in 1907 and had prevailed until 1910 when they were increased to an extent which was set forth; that such increase was entirely unjustified and that said increased rates were unreasonable. The respondent in each proceeding both by denials of allegations in the petition and by affirmative allegations insisted and asserted that the rates adopted by it in 1910 not only were not unreasonable, but on account of great increase in the cost of operation were not even fairly compensatory.

Thus the only fact admitted by what constituted the pleadings was the one that certain rates which prevailed for three years prior to 1910 had been increased. There was no allegation or admission of the circumstances under which the respondent had adopted these rates in

1907, and whether, therefore, they were in a full sense voluntary or were the result of competition or other compelling circumstances, and there was no allegation or admission that these rates had proved to be compensatory and reasonable or that the business of the respondent had prospered thereunder. On the contrary, the exact opposite was alleged at least as of the time when the increase was made in 1910.

Under these circumstances and without taking any proof to supplement the admission of the pleadings the public service commission at the very commencement of the hearing held that the existence and maintenance of these rates for three years prior to the increase in 1910 cast upon the respondent the burden of proving and establishing that its increased rates at the end of that period were reasonable. This view abided with the commission from beginning to end and controlled its attitude throughout.

At the commencement of the hearing the following took place:

" Chairman Stevens: * * * Now, I suppose the complainants take the same position as in the New Haven cases. * * *

" Mr. Paulding (counsel for respondent): I would like to ask what that position is. I do not exactly understand.

" Chairman Stevens: Why, in the first instance you have increased a long established rate which was established by your voluntary act, and the burden of proof is upon you, so to speak, to show the reason for doing it, to justify that action. * * *

" Mr. Paulding: If your Honor pleases, there is no presumption of law that a rate is unreasonable. In that case the burden of proof to establish that is upon those who are attacking the rate.

" Chairman Stevens: This commission has held that where a railroad company, by its own voluntary act, has established a rate and has continued in its use for a cer-

246 Peo. ex rel. N.Y.C. & H. R.R.R. Co. *v.* P. S. Comm.

[215 N. Y.]      Opinion, per Hiscock, J.      [June,

tain length of time so it was its established rate, not as a mere experiment trying how it would work, but it has acted upon them and the public has acted upon them for a considerable length of time, that that shows that presumptively it is a reasonable rate as against the public and as against the road, and when that road undertakes to increase the rate, the reasons being within the knowledge of the corporation which justify it, it involves upon the corporation in a hearing of this kind to present those reasons, first, to show us that the increase they had made is a just and reasonable rate."

To this ruling an exception was duly taken.

Again in the opinion handed down with the order reducing respondent's rates, it was said:

"We think that the respondent corporations have not succeeded by the evidence and arguments presented by them in overcoming the presumption that the increases complained of were unjust and unreasonable."

The public service commission was not justified by the facts in casting upon respondent the burden which it did. As I have pointed out, the only conceded fact which existed as a basis for throwing this burden upon respondent of establishing that its increased rates were reasonable was the one that a lower rate had prevailed for three years prior to the increase, and I believe that no well established principle of law and no influential authority sustains the proposition that this fact was sufficient to sustain the position which was taken.

It must have been necessary for the commission to draw two presumptions in order to reach the conclusion that the existence of the lower rates established in 1907 cast upon the respondent the burden of showing that its increase in rates in 1910 was justified and reasonable. One presumption was that the lower rates were compensatory and reasonable when established, and the other one was that a rate which was thus compensatory and reasonable in 1907 would indefinitely continue so. I

do not think that either of these presumptions was warranted.

The naked fact that a railroad has established and continued a rate for a limited time does not justify the conclusion that it was profitable. It may have been established at an unprofitable figure as the result of miscalculation, compelling competition or of a policy which was willing to endure temporary losses in the hope that thereby there might ultimately be developed a profitable traffic. In the absence of proofs showing the circumstances under, and the results with which, these lower rates were established and maintained, no court has the right to presume and hold that they were profitable.

In the second place, even if we should assume that these rates when established in 1907 were compensatory, in my opinion the presumption did not follow that this condition and result would indefinitely continue.

It is true that the courts indulge in the presumption of the continuity of certain facts and conditions in the absence of proof to the contrary. Amongst such presumptions are those of the continuance of life, intention, reputation, partnership, residence, etc. Sometimes these presumptions of continuity seem to be somewhat arbitrary and to have been adopted as a matter of convenience. So far as they rest upon any real basis that basis is common experience and observation which justify the belief that ordinarily when certain facts are established it is safe to presume others. (Lawson's Presumptive Evidence [2d ed.], pp. 639, etc.) Amongst these presumptions of continuity fortified by long observance there is none which would apply to such a case as that of railroad rates. Railroad transportation is in a certain sense a commodity and the rates charged therefor are the price or value of that commodity. There is no recognized presumption that what was a fair price for any commodity in 1907 would be a fair price for the same commodity in 1910 in the absence of some evidence showing that con-

ditions had remained stable.   No court would receive as evidence of the value of ordinary commodities such as food stuffs and coal or even of real estate proof of values which prevailed three years before unless it was supplemented by other evidence of the continuity of governing conditions, and common experience and observation do not sustain the belief that there has been any unusual stability during the last few years in prices entering into the cost of railroad operation which must be compensated by rates.

As I have pointed out, at the time this presumption was invoked and enforced against the respondent, there not only was no admission of pleadings and no evidence showing that conditions and cost of railroad operation was the same in 1910 as in 1907, but it was a matter of common knowledge that during that period there had been widespread and substantial changes and increases in the cost of such items as wages, coal and safety appliances which go to make up this cost of operation.   The public service commission was certainly chargeable with knowledge in this case that in 1910 there was a substantial increase in the wages of employees on respondent's road, and it is established that in fixing rates on any particular branch of a railroad the company may not be compelled to consider merely that branch by itself, but it is entitled to have taken into account the cost of operation and rates prevailing over its entire system.   (Wyman on Public Service Corporations, vol. 2, § 1175.)

I do not attach any importance to the idea which seems to have been somewhat involved in this presumption that the burden should be cast upon the railroad of explaining and justifying its increase of rates because the knowledge which pertained to that subject was peculiarly within its possession and control.   In view of the regulations which have been imposed upon railroad corporations and of the requirements which have been enforced against them for public reports of all of the details of their operations it

Peo. ex rel. N.Y.C. & H.R.R.R. Co. v. P.S. Comm.   249

1915.]              Opinion, per Hiscock, J.              [215 N. Y.]

would seem to be a mistake to assume that they have any peculiar or hidden knowledge of their own affairs.

Therefore, I think that there is not to be found amongst the established presumptions any one which justified the ruling which was made. Neither do I find any authority which seems to me to support it.

In *Interstate Commerce Commission* v. *Chicago Gt. Western Railway Co.* (209 U. S. 108, 119) there was involved the subject of increased railroad rates and this general rule was laid down: "It must also be remembered that there is no presumption of wrong arising from a change of rate by a carrier. The presumption of honest intent and right conduct attends the action of carriers as well as it does the action of other corporations or individuals in their transactions in life. Undoubtedly when rates are changed the carrier making the change must, when properly called upon, be able to give a good reason therefor, *but the mere fact that the rate has been raised carries with it no presumption that it was not rightfully done.*"

This general rule has not been changed by other decisions which are relied on as sustaining the ruling made in this case, but wherever it has been held or intimated in such latter cases that a presumption arose against the reasonableness of increased rates there has appeared some other fact in addition to the mere change in rates which fairly warranted the presumption that the prior rates were reasonable and, therefore, the increased rates unreasonable.

Thus in *Interstate Commerce Commission* v. *Louisville & N. R. R. Co.* (227 U. S. 88, 99, etc.) it appeared that for many years prior to the increased rates which were being attacked as unreasonable the carrier had maintained certain low local rates. When first put in force they were abnormally low because compelled by water competition and, therefore, as the court distinctly held they furnished no just standard of reasonableness, it

being said, "if when that competition disappeared the rates had been advanced, no inference adverse to the railroad could have been drawn from the increase." But it further appeared that after this water competition had ceased for several years the same rates were maintained and that when the increase complained of occurred it was made not because of the absence of water competition but to make the sum of the local rates correspond with the through rates, and it was held that under these circumstances the maintenance of these rates after the water competition had disappeared tended to support the theory that by an increase of business or other cause they had become reasonable and compensatory.

In *Louisville & N. R. R. Co.* v. *Finn* (235 U. S. 601, 607), certain new and increased rates were the object of attack. The company long prior to the date of the increased rates had voluntarily established comparatively low rates upon a part of its traffic and had maintained them for years after the reason assigned for originally introducing them had ceased to exist, and had withdrawn them not upon the ground that they were inadequate but because they gave rise to discrimination and in so doing had introduced rates very much greater than those before prevailing. Under these circumstances the court said that "There was some * * * evidence, but not very much, that bore directly upon the question of the reasonableness of the rates;" and (referring to the facts above stated) "it seems to us that the conduct of the carrier, in the absence of some explanation more conclusive than any that was made, was sufficient basis for a reasonable inference that the special rates in force prior to March 25 * * * were reasonable and adequate compensation * * * and that the rates thereafter charged were unreasonably high to the extent of being extortionate."

These cases come very far from establishing the rule applied in this case that mere evidence of an increase of rates establishes a *prima facie* case against the carrier

that the new rates are unreasonable and casts upon it the burden of establishing the reasonableness of such rates.

It further seems to me significant as casting doubt upon the rule applied by the commission in this case that in 1910 and 1914 statutes were adopted respectively by the Congress of the United States and by the legislature of the state of New York specifically casting upon a carrier the burden of establishing the reasonableness of its rates when it appeared that such rates carried an increase over those which had prevailed previously. If there had existed such a rule of law as was applied by the commission in this case there would have been no necesssity for the enactment of these statutes. (36 U. S. Statutes, 1910, chap. 309, section 15; Laws 1914, chap. 240.)

But it is further said, in substance, that this ruling of the public service commission simply affected the order of proof, and that, therefore, even if erroneous, it was not substantially prejudicial. If in this argument the premise is correct, of course the conclusion is. A ruling affecting the order in which evidence should be produced would not be a matter of serious consequence if in the end each side was fully heard and the burden of establishing the ultimate facts necessary to the final conclusion placed upon the proper party. I agree that in proceedings before such a body as the public service commission we should not give too great importance to technical rules of procedure provided substantial principles controlling the merits have been properly recognized. I am not able to agree, however, that this latter course governed the present proceeding and that the ruling of the public service commission affected only the order of evidence. On the other hand, I think it is plain that as the result of a misconception of the significance of the fact that an increase in rates had been made, the commission relieved the complainants of the burden of establishing that the new rates were unreasonable and instead cast upon the respondent the burden of showing that they were reasonable.

While the counsel for the appellant seems to argue that in this proceeding the burden did not rest upon the complainants of establishing that the rates complained of were unreasonable, I think that the proposition that the complainants did have such burden is scarcely debatable. They were attacking certain rates as unreasonable and asking that those rates should be reduced, and the burden rested upon them as a means of securing this relief to supply the evidence showing that the rates were unreasonable and that they were entitled to the relief which was being sought and which in fact has been granted.

As I have already pointed out, at the very commencement of the hearing when no fact appeared except the simple one that there had been an increase of rates, the commission informed the respondent that the burden of proof rested upon it to show the reason for increasing its rates and to justify that action. It is true that it was stated that such rule rested on certain elements outside of the mere fact that there had been an increase in rates, but, of course, the ruling was not fortified in this case by the statement of these elements which did not appear in this case. The controlling manner in which this conviction remained with the commission that the burden rested upon the respondent to justify its increase is shown by what was said in the opinion handed down with the order reducing the rates. It was said: " We think that the respondent corporations have not succeeded by the evidence and arguments presented by them in *overcoming the presumption* that the increases complained of were unjust and unreasonable." It seems to me that this shows very clearly that the burden of the entire proceeding rested upon the respondent; that it was compelled to prove that the rates were reasonable and that it cannot fairly be said that the commission was considering the mere order of proof, and that it kept in mind the rule that upon the whole case the burden rested upon the complainants to show that the rates were unreason-

able.   If the commission had ruled that it appearing that
rates had been increased it would hear the respondent
and then the complainants and upon all the evidence
decide whether the new rates were proper, always remem-
bering that on the whole case the burden rested with the
complainants by a preponderance of evidence to establish
that they were thus unreasonable, that ruling would have
related to the order of proof and would not have been seri-
ous even if erroneous.   But that was not what was done.
The commission said to the respondent, in substance, it
appearing that rates have been increased the burden
henceforth rests upon you of proving that the new rates
are reasonable; if in the light of this presumption in
which we are indulging the evidence is evenly balanced
your contention must fail — as it did fail — plainly and
explicitly because the presumption had not been over-
come.   This was not a mere order of proof.   It was an
improper location of the burden of the case based on an
erroneous presumption.

I take it that it is unnecessary to discuss the proposition
that if the commission in its deliberations did misconceive
the location of the affirmative and of the burden of proof
and did cast these upon the respondent when they did not
belong there, the error was a serious one and should not
be overlooked.

The views which I have reached on this question would
lead to a reversal of the action of the public service com-
mission and to an affirmance of the order made by the
Appellate Division, without consideration of other ques-
tions which have been discussed.

We cannot, however, refrain from suggesting the view
that the commission seems to have been influenced by
what it deemed to be the wiser policy for the manage-
ment of respondent's road, rather than to have confined
itself to the consideration of the sole question whether
the rates charged by the respondent were unreasonable
or not.   There is no express finding that the new rates

were unreasonable; there is a long discussion of the benefits which the commission thought would result to the respondent from adopting a policy of low commutation rates. In this course it took into account considerations which were really not before it. The question what general policy should be adopted by the respondent in developing suburban trade was one to be decided by it and not by the state. The methods and rates which it should apply to the development of any policy were subjects for regulation, but the question whether the welfare of the road would be best subserved by one policy or another, was a subject to be decided by the officers and stockholders of the corporation. It seems to me the commission was more or less influenced by this consideration which was irrelevant.

I think the order of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, HOGAN and MILLER, JJ., concur; CARDOZO, J., dissents.

Order affirmed.