## MONTROSE OIL REFINING CO., Inc., v. ST. LOUIS-SAN FRANCISCO RY. CO. et al.

District Court, N. D. Texas.     April 8, 1927.

No. 1196.

**1. Commerce ⚖➡88—Interstate Commerce Commission's award, not supported by substantial evidence, is illegal (Interstate Commerce Act, § 16, as amended [49 USCA § 16]).**

Award of Interstate Commerce Commission for shipper in suit under Interstate Commerce Act, § 16, as amended (49 USCA § 16; Comp. St. § 8584), is illegal, if without substantial evidence to support it.

**2. Commerce ⚖➡87—Evidence held to support award for shipper against railroad on ground rates were unreasonable, discriminatory, and preferential, and violated long and short haul rates provision (Interstate Commerce Act, § 16, as amended [49 USCA § 16]).**

In shipper's action against railroad brought under Interstate Commerce Act, § 16, as amended (49 USCA § 16; Comp. St. § 8584), on ground that rates charged for shipments were unreasonable under section 1 (49 USCA § 1; Comp. St. § 8563), discriminatory under section 2 (49 USCA § 2; Comp. St. § 8564), prejudicial and preferential under section 3 (49 USCA § 3; Comp. St. § 8565), and violated long and short haul rates provision under section 4 (49 USCA § 4; Comp. St. § 8566), evidence held, sufficient to support award by Interstate Commerce Commission for plaintiff.

**3. Carriers ⚖➡26—Failure of connecting carrier to participate in publication of "through rate" will not render it inapplicable over its lines; "joint rates."**

Rates established for transportation over joint lines and joint route by concurrence of participating carriers are "joint rates," as distinguished from "through rate," so that fact that one railroad did not participate in publication of through rate by another railroad would not render it inapplicable over its lines.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Joint Rate.]

**4. Commerce ⚖➡87—Comparison of existing charges made under similar conditions may be made in determining whether particular rate is reasonable.**

Comparison of existing charges made under similar conditions may be made in determining whether particular rate is reasonable or not, especially where none of rates are attacked as being confiscatory.

**5. Carriers ⚖➡26—Railroad, with knowledge of possibility of large oil shipments from certain point, cannot excuse failure to establish rates from such point by attempting to impose duty on shipper of requesting rate (Interstate Commerce Act, § 4 [49 USCA § 4]).**

Where railroad had knowledge of large oil production in certain vicinity and possibility of large shipments, it cannot excuse its failure to establish rates from such point under Interstate Commerce Act, § 4 (49 USCA § 4; Comp. St. § 8566), by attempting to impose on shipper duty of requesting rate.

**6. Commerce ⚖➡95—Court reviewing sufficiency of evidence to support Interstate Commerce Commission's findings only determines whether substantial evidence was introduced to support them.**

Whether evidence before Interstate Commerce Commission would be satisfactory to all reasonable minds, its probative force, and whether method of introducing it would be competent in court of law, cannot be considered by court reviewing sufficiency of evidence, since it is only required that substantial evidence be introduced.

**7. Commerce ⚖➡87—Interstate Commerce Commission held authorized under prayer for general relief to award more than amount specified in shipper's specific request for reparation (Interstate Commerce Act, § 16, as amended [49 USCA § 16]).**

In shipper's action against railroad under Interstate Commerce Act, § 16, as amended (49 USCA § 16; Comp. St. § 8584), Interstate Commerce Commission held, entitled to award more than specific reparation asked in complaint, in view of prayer following specific request for relief asking "such other sums as in view of the evidence" commission shall determine complainant is entitled to.

**8. Commerce ⚖➡97—Court, in trial de novo, after hearing before Interstate Commerce Commission of shipper's suit against railroad, is not concerned with irregularity in procedure not denying substantial right or transcending Commission's powers (Interstate Commerce Act, § 16, as amended [49 USCA § 16]).**

Where shipper's suit under Interstate Commerce Act, § 16, as amended (49 USCA § 16; Comp. St. § 8584), comes to District Court de novo after hearing before Interstate Commerce Commission, court is not concerned with irregularity in procedure before Commission which does not amount to denial of substantial right or in some manner transcend powers of Commission.

**9. Commerce ⚖➡91—Shipper's recovery from railroad for unreasonable rates cannot be defeated on ground of waiver or estoppel not shown in plea and evidence (Interstate Commerce Act, § 16, as amended [49 USCA § 16]).**

Shipper, in suit against railroad under Interstate Commerce Act, § 16, as amended (49 USCA § 16; Comp. St. § 8584), to recover for unreasonable rates, held, not to have waived, and is not estopped to claim, reparation, where fundamental elements of both waiver and estoppel were lacking in plea and evidence.

**10. Commerce ☞86—Interstate Commerce Commission is not required to adhere to strict rules of evidence obtaining in courts.**

Interstate Commerce Commission is not bound by mechanical rules in receiving and giving effect to weight of evidence, and its orders are not invalidated by its refusal or failure to adhere to strict rules of evidence obtaining in courts.

**11. Commerce ☞95—Award and orders of Interstate Commerce Commission are prima facie evidence of facts therein found.**

Award and orders of Interstate Commerce Commission, having been made and entered within scope of its authority, are prima facie evidence of facts therein found.

At Law. Action by the Montrose Oil Refining Company, Inc., against the St. Louis-San Francisco Railway Company and others. Judgment for plaintiff.

Judgment affirmed 25 F.(2d) 755.

E. H. Ratcliff, of Fort Worth, Tex., and H. C. Walker, Jr., of Shreveport, La., for plaintiff.

M. G. Roberts, of St. Louis, Mo., and Goree, Odell & Allen, of Fort Worth, Tex., for defendants.

WILSON, District Judge. This is a suit under section 16 of an Act to Regulate Commerce February 4, 1887, c. 104, 24 Stat. 379, 384, as amended (chapter 1, tit. 49, U. S. Code [49 USCA § 16; Comp. St. 8584]), to recover of the defendants $55,850.15, 6 per cent. interest thereon from December 1, 1920, and an attorney's fee of $7,500. The principal amount and interest were awarded plaintiff as reparation under the act, by the Interstate Commerce Commission. The circumstances are these. From April 21, 1920, to May 20, 1921, plaintiff shipped 62,568,697 pounds of crude petroleum in carload lots from Cement, Okl. to Fort Worth, Tex., over the defendants' lines of railway, paying transportation charges for the service in the sum of $175,291.80, and certain switching charges not now in controversy. Cement is on the Frisco intermediate Lawton, Okl., and Chickasha, Okl.; by Lawton, and from thence over the Chicago, Rock Island & Pacific lines, it is 187.7 miles from Cement to Fort Worth, and by Chickasha, over the latter line, it is 192.3 miles, while over the Frisco alone, via Sapulpa, Okl., it is 459.5 miles.

When the shipments began in April, 1920, defendants had published a rate restricted over its own lines via Sapulpa, for crude petroleum in carloads, of 22.5 cents, applicable from Lawton, and the intermediate point, Cement, to Fort Worth. This rate was increased to 30.5 cents on August 26, 1920,

when a general increase in freight rates of 35 per cent. was authorized by the Interstate Commerce Commission. At the same time defendants had published a rate from Lawton to Fort Worth, unrestricted as to routing, of 15.5 cents for crude petroleum in carloads. Under the erroneous belief that the 22.5 cents rate also applied to shipments from Cement via Lawton to Fort Worth, plaintiff routed 19 cars that way, and was charged a distance commodity rate of 50 cents per hundred pounds, applicable over that route. The remaining shipments went by way of Sapulpa; some of them were routed that way by plaintiff to avoid the distance commodity rate of 50 cents; and the remainder were unrestricted as to routing.

Complaint was made to the Interstate Commerce Commission by the plaintiff, that the rates charged for the shipments were unreasonable, in violation of section 1 of the act (49 USCA § 1; Comp. St. § 8563), unjustly discriminatory in violation of section 2 (49 USCA § 2; Comp. St. § 8564), unduly prejudicial and preferential in violation of section 3 (49 USCA § 3; Comp. St. § 8565), and in violation of the long and short haul aggregate of intermediate rates provision of section 4 of the act (49 USCA § 4; Comp. St. § 8566).

The Commission, upon notice and after hearing, found, by comparing the rates in effect for similar service and under similar conditions, that the rates collected from plaintiff, in so far as they exceeded 19.5 cents prior to August 26, 1920, and 26.5 cents thereafter, were unreasonable, that plaintiff had been damaged to the amount of the difference between the charges so collected (switching charges included) and the reasonable rate found by it, and, on April 10, 1923, ordered that reparation on that basis, with interest, be paid; the amount due to be determined in accordance with the Commission's Practice Rule No. V. At the same time 19 cents was fixed as a reasonable joint rate for the future to apply from Cement to Fort Worth over the Frisco to Lawton and the Rock Island beyond.

The plaintiff filed a motion with the Commission suggesting that the reasonable rate found for the future should have been applied to the reparation award on the basis of 15.5 cents prior and 19 cents subsequent to August 26, 1920. This suggestion was adopted December 8, 1924. 95 I. C. C. 96. Rule V statement was filed with the Commission September 21, 1925, showing the amount collected by the carrier to have been $55,850.15 in excess of the reasonable rate fixed

by the Commission over the short line distance. Orders were entered by the Commission for the payment of the award, and, the defendants failing to comply therewith, the plaintiff instituted this suit, setting forth as its damage the amount awarded by the Commission, the same violations of the act complained of before the Commission, and the orders of the Commission in the premises.

[1, 2] First. The defendants contend the award of the Commission is without substantial evidence to support it. If this be true, the award was illegal, and the Commission exceeded its powers in entering it. Interstate Commerce Commission v. Louisville & N. R. R., 227 U. S. 88, 33 S. Ct. 185, 57 L. Ed. 431; Louisville & N. R. R. v. Finn, 235 U. S. 601, 35 S. Ct. 146, 59 L. Ed. 379. The proceedings before the Commission are all in evidence here, and it is necessary to examine them to see if they are supported by substantial evidence. Florida Ry. Co. v. U. S., 234 U. S. 167, 34 S. Ct. 867, 58 L. Ed. 1267.

The argument is that the Commission erroneously found the rate of 15.5 cents published by defendants for transportation of crude oil from Lawton to Fort Worth, routing unrestricted to its lines, to be applicable by way of Lawton to Fort Worth, via defendants' lines to Chickasha, thence over the Rock Island to destination, because, it is said, it is not shown such rate was effective in that direction. It is urged that is true because of the publication of the higher rate of 22.5 cents restricted to the Frisco lines.

[3] The Commission found that defendants had published and in effect from Lawton to Fort Worth, through Cement, by way of Chickasha, a rate of 15.5 cents from August 26, 1920, and 21 cents thereafter, for similar service to that rendered the plaintiff, and that this rate was not restricted to the lines of defendants. This is, in effect, a finding of the existence of a "through rate." It is argued however, in this connection, that the rate could not be made to apply because the Rock Island had not participated in its establishment. Rates established for transportation over joint lines and a joint route, by concurrence of the participating carriers, are "joint rates," and it seems to be common practice for carriers to initiate both classes. The fact, therefore, that the Rock Island had not participated in the publication of the rate in question, would not render the rate inapplicable over its lines from Chickasha. Defendants held themselves out, by the publication of the tariff, as capable of accepting shipments from Lawton, unrestricted as to route, and delivering them at Fort Worth, for 15.5 cents per hundred pounds. The routing found by the Commission for such shipments through Cement and by way of Chickasha was clearly available. The evidence before the Commission substantially and persuasively sustains its findings in this regard.

The Commission also found that the 15.5-cent rate from Lawton to Fort Worth was substantially the same as the Shreveport to Texas joint scale rate for 183 miles; that there were effective rates for crude oil in carloads from the Burkburnett field in Texas to points in Oklahoma of 17.5 cents which returned an average ton-mile revenue of 12.1 mills; there was a rate from Oklahoma City to Fort Worth by way of Cement and Lawton (a distance of 59.9 miles greater than that from Fort Worth to Cement by the same route) of 19.5 cents prior to August 26, 1920, and 26.5 cents thereafter. It was further found that for the future a rate of 19 cents per hundred pounds (which is on the basis of 15.5 cents prior to August 26, 1920), was reasonable and should be established from Cement by way of Lawton and Chickasha. These findings are supported by evidence in the record before the Commission. It is also apparent that a proper interpretation of the 15.5 tariff published by the defendants for shipments from Lawton to Fort Worth, was that it would be applicable to a shipment delivered to the Frisco at Lawton and routed over its lines through Cement to Chickasha and thence over the Chicago, Rock Island & Gulf to Fort Worth. St. Louis Southwestern Ry. v. United States, 245 U. S. 136, 38 S. Ct. 49, 62 L. Ed. 199; Re Through Routes and Through Rates, 12 I. C. C. 163.

The failure to establish a reasonable through rate or a joint rate from the intermediate point Cement, was found by the Commission to have been due to the fault of the defendants and not attributable to any fault of the plaintiff. This finding is sustained by the evidence hereinafter mentioned.

That the through route and rate over it is applicable under similar circumstances to those presented in this case has been held by the Circuit Court of Appeals for this circuit in St. Louis Southwestern Ry. v. Samuels, 211 F. 588, where it was also held the act was violated by the failure of the carrier to apply the lower rate.

[4] By comparing the charges for similar service and under similar conditions with the

rates demanded and collected from the plaintiff, the Commission found the latter to be violative of the act in the respects complained of to the extent they exceeded 15.5 cents, and substantially, that the damage to the plaintiff resulted in the failure of the defendants to establish through routes and just and reasonable charges as provided in the act. Comparison of existing charges made under similar conditions has been recognized as a proper basis for fixing reasonable new rates. Western Paper, etc., Co., v. United States, 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941. It is inconceivable that this method may not be employed in determining whether a particular rate is reasonable or not, especially where, as here, none of the rates are attacked as being confiscatory. Indeed, the evidence before the Commission shows without contradiction that 15.5-cent and 21-cent rates from Cement would have yielded ton-mile revenues of 17 and 23 mills, respectively, for the short-line distance, as compared to an existing yield of 12.1 mills per ton mile for average hauls of 288 miles on which a rate of 17.5 cents was applicable.

Furthermore, the question whether there was substantial evidence of an existing rate of 15.5 cents from Lawton through Cement via Chickasha to Fort Worth at the time the shipments in question moved is of no great consequence. The act is plainly violated if the carrier fails to establish through routes and reasonable charges, or if it makes an unreasonable charge for its service. The evidence as above set out substantially sustains the finding of unreasonableness.

[5] It is argued in connection with this proposition, however, that the award of the Commission was based solely on the failure of defendants to comply with the Commission's Rule 77, relating to the establishment of rates from intermediate points, under the fourth section of the act, and that the plaintiffs did not make reasonable request for the establishment of such. The rule was adopted to relieve carriers of the duty of posting large volumes of tariffs at intermediate points where shipments thereunder might never be made. Nothing in this rule waives any of the provisions of the act under which it was adopted, or in any manner relieves the carrier of any of its duties thereunder. The Commission found that the Frisco was responsible for the failure to establish a through route and a reasonable rate from Cement. This finding is sustained by a letter from the plaintiff to the defendants, shown in the records before the Commission requesting the establishment of a rate to apply from

Cement, wherein the large oil production in that vicinity was called to the attention of the carrier and the possibility of large shipments referred to. This letter was written months before the shipments began moving. There is also testimony of conversations to the same effect between representatives of both parties, long before the shipments moved. The defendants clearly had knowledge of the situation, and cannot excuse their violation of the act by attempting to impose the duty upon plaintiffs of requesting the establishment of a route and rate under such circumstances. The only explanation of the failure on the part of the defendants to establish the route and rate was the testimony of one of its witnesses before the Commission that he believed the carrier had the legal and moral right to restrict the traffic to its own lines regardless of shorter routes.

[6] Finally, whether the evidence before the Commission would be satisfactory to all reasonable minds, its probative force, and the method of introducing it competent in a court of law or not, cannot be considered here. It is only required that substantial evidence be introduced. The evidence upon which the findings of the Commission was based in the respects mentioned was substantial, all parties concerned were present and heard, and this is sufficient. Interstate Commerce Commission v. Louisville & N. R. R., 227 U. S. 91, 33 S. Ct. 185, 57 L. Ed. 431; Western Paper, etc., Co. v. United States, supra.

[7] Second. It is said the order is void because not supported by the pleadings of the plaintiff before the Commission. This question arises from the fact that in the prayer to the complaint before the Commission, reparation was asked on the basis of 19.5 cents prior to August 26, 1920, and 26.5 cents thereafter, while reparation was awarded on the basis of 15.5 cents prior to August 26, 1920, and 19 cents thereafter, with interest. Following the specific request for relief in the complaint, the prayer contains this following request: "Or such other sums as, in view of the evidence adduced herein, the Commission shall determine that complainant is entitled to under the provisions of said act." It is further shown in this connection that the order of reparation as originally entered on April 10, 1923, was on the basis of the specific prayer for reparation in the complaint, and the final award in controversy here was entered on December 8, 1924, pursuant to a motion for reconsideration filed by the plaintiff. No evidence was taken on the motion to reconsider. The parties had been

fully heard, the question was on the amount of reparation, and this was based, not upon the prayer of the complaint, but upon the evidence as already indicated, and could have been awarded under a prayer for general relief. Louisville & N. R. R. v. Sloss-Sheffield Co., 269 U. S. 217, 229, 46 S. Ct. 73, 70 L. Ed. 242. Defendants do not contend they did not have a full hearing; that they would have offered evidence that the allowance for their services was confiscatory or violative of their constitutional rights; nor is it said they did not have notice of and an opportunity to be heard upon the motion to reconsider. Indeed they have not offered any evidence here to rebut the finding of the Commission that the rates charged and collected for the shipments in question were not unreasonable to the extent of the reparation awarded. They did ask reconsideration of the order of December 8, 1924, and their motion to this effect was overruled. The motion was on the same ground urged here, and found to be unsubstantial—that the order was not sustained by any evidence.

[8] The case is here de novo, and this court is not concerned with an irregularity in procedure, if that complained of be such, which does not amount to a denial of a substantial right or in some matter transcend the powers of the Commission. The practice of awarding reparation to an amount in excess of the amount prayed for in a complaint is not novel but seems to be in usage by the Commission. Nollenberger v. M. P. R. Co., 15 I. C. C. 595, 598.

[9] Third. It is urged the plaintiff waived and is estopped to claim reparation (a) by not requesting the establishment of a rate of 15.5 cents under Rule 77; and (b) because it requested the establishment of a higher rate than that charged and agreed it was reasonable.

The finding of the Commission that the Frisco was responsible for the failure to establish a through route and reasonable charges for the transportation in question has not been rebutted by any evidence here. It is not shown that the defendants were prejudiced or misled by the failure of the plaintiff to request the particular charge, or that they would or could have saved themselves anything by receiving a different request than was made. As already pointed out, the defendants refused to make the route and rate because they believed they had the right to restrict traffic from noncompetitive points to their own lines.

The fundamental elements of both waiver and estoppel are lacking in the plea and evidence. Whether such plea, properly presented, would be availing, it is not necessary to determine.

[10] Fourth. It is said the award is illegal because contrary to judicial admissions and evidence of the plaintiff before the Commission. Colloquies between the parties before the Commission's examiner and plaintiff's witnesses relating to the nature of the case are urged in support of the contention. The argument is clearly an attack upon the internal methods employed by the Commission in arriving at its judgment, and the soundness of its judgment. There is no occasion to discuss the facts. The Commission did not exceed its powers. It is not bound by mechanical rules in receiving or giving effect to the weight of evidence. Its orders are not invalidated by its refusal or failure to adhere to the strict rules of evidence obtaining in the courts. The evidence hereinbefore referred to substantially sustains its findings, and they must stand here for what they are worth. Western Paper, etc., Co., v. United States, 271 U. S. 268, 270, 46 S. Ct. 500, 70 L. Ed. 941.

[11] Fifth. The award and orders of the Commission under consideration here, having been made and entered within the scope of its authority, are prima facie evidence of the facts therein found. United States v. Los Angeles & S. L. R. Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651. There is no additional evidence before the court from which a conclusion can be reached that the facts as found by the Commission are not correct. The act was clearly violated in the respects complained of.

Judgment should be for the plaintiff for the amount of $55,850.15, 6 per cent. interest from December 1, 1920, and an attorney's fee of $7,500 included and taxed as a part of the costs of suit.