## ILLINOIS CENT. R. CO. v. VEST et al.

District Court, E. D. Kentucky.

May 16, 1927.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., for plaintiff.

Frank Daugherty, Atty. Gen., of Kentucky, for Railroad Commission of Kentucky.

Before DENISON and MOORMAN, Circuit Judges, and ANDREW M. J. COCHRAN, District Judge.

PER CURIAM.

This cause is before the court on motion for a temporary injunction enjoining the defendants from enforcing an order of the Railroad Commission of Kentucky. The order was entered upon a complaint filed May 1, 1924, by certain shippers, codefendants with the Railroad Commission in this proceeding, alleging that the rates from the coal producing mines on the lines of the Illinois Central Railroad Company in Western Kentucky to Mayfield and Clayburn were excessive and extortionate, and praying for reasonable rates in the future and reparation on shipments made during the pendency of and for the period of two years prior to the filing of the complaint. Upon the hearing the commission held that the existing rates,

$1.58 per ton on steam coal to Mayfield, $1.69 per ton on coal to Clayburn, and a like rate on domestic or coal other than steam to Mayfield, were unreasonable, and entered an order fixing the rates for the future for both points at $1.35 per ton on steam coal and $1.58 per ton on domestic or other coal. The order also directed the railroad company to pay to complainants the sums that it had collected in excess of the rate so fixed on shipments made by complainants subsequent to July 1, 1922, but did not undertake to determine the amount of the several awards made because complainants had not placed before the commission, at that hearing, the evidence as to the alleged excessive payments. On a subsequent hearing proof of the amounts paid by the complainants in excess of the rate found by the commission to be reasonable was offered, and an order was entered directing the railroad company to pay to complainants the specific amounts thus shown.

The motion before us seeks to restrain the enforcement of this order on the following grounds: (1) It is not supported by substantial evidence; (2) the commission did not find the old rate excessive or extortionate for any definite period prior to the entry of its order; (3) it had before it, at the first hearing, no evidence as to shipment charges collected, and at the second hearing refused the railroad company the right to a full hearing on the question of reparation or damages; and (4) because of the passage of the Transportation Act the commission was not authorized to award reparation on shipments made in the past.

The first ground, dealing with the rate order, requires a consideration of the evidence, which consisted of a comparison of rates, car mile and ton mile earnings on the same commodity for comparable distances in the same general territory. These earnings, with engine ratings, are generally accepted as indicia of transportation conditions, and the evidence pertaining to the Illinois Central lines from the mines to Mayfield and Clayburn, as compared to similar data concerning its lines from the same mines in other directions, clearly shows that, if favorable transportation conditions are to be considered in fixing rates, those to Mayfield and Clayburn, other conditions being equal, should be lower than in other directions. Obviously, however, such conditions alone would afford no basis for determining the reasonableness of the rates charged. Additional evidence, in connection with which these earnings and ratings become important, was offered in the form of proof of rates from the same group of mines for comparable distances within the same general territory. It was not to be expected that it could be proved that transportation conditions or distances of other such comparable hauls were exactly similar to those under investigation; but, nevertheless, certain rates were proved by complainants which afford a reasonable basis of comparison with the rates in question after due allowance is made for differentials resulting from competitive and other conditions.

The commission fixed the rates, as we have said, at $1.35 per ton for steam coal and $1.58 per ton for domestic or other coal for a haul averaging 122 miles. This is supported, as defendants contend, by proof that from the same group of mines to Evansville, a distance of 156 miles, the rate was $1.26; to Nashville, a distance of 170 miles, $1.35; to Louisville and Camp Knox, the distance to the latter point being 121 miles, $1.26; to St. Louis, a distance of 280 miles, $1.48½. It was further shown that the rates from Illinois mines to Cairo, a distance of 117 miles, was $1.34, and from Tennessee mines to Richard City, Tenn., 131 miles, $1.24. As against this the railroad company claims that the rates to Paducah and Louisville were fixed under an order of the Railroad Commission; that the Nashville, Richard City, and St. Louis rates were either fixed by the Interstate Commerce Commission, or were voluntarily made to meet rates that the commission had fixed on some other line. Some such similar claims are made as to the Cairo, Camp Knox, and Evansville rates, though the record fails to disclose what the competitive conditions and rates were as to these points as well as to Louisville. The railroad company also introduced proofs of rates higher for comparable distances than those fixed by the commission on shipments from Illinois mines to Kentucky and from Illinois mines to Missouri, which, however, we think, has little bearing on the reasonableness of the rates in controversy because of dissimilar transportation conditions, including river crossings and, in some instances, two line hauls.

[redacted] The test of the reasonableness of a rate order, so far as the courts are concerned, is whether there was substantial evidence before the commission to support its finding. Interstate Commerce Commission v. Union Pacific R. Co., 222 U. S. 541, 32 S. Ct. 108, 111, 56 L. Ed. 308; L. & N. R. R. Co. v. Finn, 235 U. S. 601, 35 S. Ct. 146, 59 L. Ed.

379; New York v. United States, 257 U. S. 591, 42 S. Ct. 239, 66 L. Ed. 385. If there is substantial evidence supporting the order, the expediency or wisdom of it, or, as said in the Union Pacific Case, "whether, on like testimony," the court would have made a similar ruling, is not to be considered by the courts, for, although the commission's conclusion is subject to review, it is, "when supported by evidence, * * * accepted as final." This, we take it, does not mean a scintilla but substantial evidence. While a comparison of rates, car earnings, and engine ratings does not of itself necessarily tend to establish the reasonableness of a rate, it may, nevertheless, especially where some of the comparable rates, as here, were fixed by the Interstate Commerce Commission, afford substantial evidence upon which a commission may legally act in establishing a rate. L. & N. R. R. Co. v. United States, 238 U. S. 1, 35 S. Ct. 696, 59 L. Ed. 1177. When the commission's order based thereon is attacked, however, it is the duty of the court to look to the comparisons and determine whether, as it views their effect, there was substantial evidence to support the order. We have no trouble in believing that there was such evidence before the commission in this case, and hence there is no power in this court, under the cases cited, to enjoin the enforcement of the order on the ground that it was arbitrarily made.

■ That the commission had power to establish retroactive rates and to award reparation for shipments made by complainants under the old rates for the period of two years prior to the filing of the complaint is not open to doubt. The commission found that any rate in excess of the rates established by its order "shall be deemed to have been" unreasonable and extortionate, and proceeded to award reparation. The evidence as to operating conditions, as to rates on comparable hauls, car mile earnings, and engine ratings, covered a period beginning long anterior to July 1, 1922, the beginning of the reparation period. There is no substantial difference in the evidence relating to the reasonableness of the rates for two years before the filing of the complaint and at the time of the hearing. Accordingly, the evidence as to the rates upon which reparation was granted is quite as substantial as that upon which the future rates were made. This, we think, disposes of the second ground of complaint.

■ Upon the second hearing held to permit the shippers to introduce proof of payments in excess of the rates found to be reasonable, and which resulted in specific awards, the railroad company sought, not only to show that the overcharges had been passed on to others, but also to attack the basis of the order of reparation—presumably the reasonableness of the rate on which the awards were made. The commission refused to reconsider the rate order, but permitted a full hearing on the questions of excessive payments made by complainants under the old rates. It is not argued here that the awards were not made on the basis of the difference between the rates held excessive and extortionate and those fixed by the commission, as reasonable, nor is it claimed that the various complainants did not pay these amounts to the carrier in excess of what they would have been required to pay had reasonable rates—those fixed by the commission—been in effect. The rates upon which the awards were granted had been determined in the previous hearing, at which the railroad company had full opportunity to present its case. There was reserved for the subsequent hearing the question of overcharges, complainants being permitted to offer their proofs as to such amounts. They offered proofs, and defendant was given the opportunity of fully examining those proofs and offering such as it cared to offer. The rule is that, where a shipper pays a rate held to be unreasonable, he may recover the excess and need only show that he paid and bore the charges, and neither the commission nor the court will inquire whether, in the course of his business, he recouped his losses or passed them on to others. This was held in Southern Pacific Co. v. Darnell Lumber Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451, and reaffirmed in L. & N. R. R. Co. v. Sloss-Sheffield Co., 269 U. S. 217, 46 S. Ct. 73, 70 L. Ed. 242. The questions of counsel for the railroad company, to which objections were sustained, dealt with the subject of passing the charges on to others, which under these authorities was not open. Since, therefore, the railroad company was given an opportunity fully to examine complainants, within the permissible scope of the inquiry, it cannot claim that it was denied its constitutional right of a hearing on the damages. Neither can it maintain that it was denied that right as to the reasonableness of the rate, which, as we have seen, was given it at the original hearing.

■ Respecting the contention that since the passage of the Transportation Act it is not within the power of the commission to award reparation for past years, it would seem enough to say, notwithstanding the purposes of that act, and especially that part of it now

identified as subsection 2 of section 15a of the Interstate Commerce Act (49 USCA § 15a(2), namely, to insure "as nearly as may be to a fair return upon the aggregate value of the railway property," that it was specifically provided in the same act, subsection 17 of section 15a (49 USCA § 15a(17), that the provisions of this section should "not be construed as depriving shippers of their right to reparation in case of overcharges, unlawfully excessive or discriminatory rates, or rates excessive in their relation to other rates." Congress had not, up to that time, and, in our opinion, has not by this act, attempted (whether it could or could not do so would present a serious question) to take from the state the power of regulating purely intrastate railway traffic or deprive it of the right to fix rates thereon. The purpose of the act to establish a general rate level affording a reasonable return on the railway property, if carried to the extent to which the railroad company contends, would result in the abrogation of the right of the interstate shipper to exact reparation before the Interstate Commerce Commission and preclude a claimant from collecting a judgment in damages quite as logically as it would deprive the intrastate shipper of reparation for an unlawfully exacted rate. We can find no sound reason for construing the act as depriving the intrastate shipper of this right, and we think the reasoning of Dayton-Goose Creek Railway Co. v. United States, 263 U. S. 456, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472, sustains this view.

The motion for an injunction is denied.