## Chesapeake & Ohio Railway Company v. Johnson.

(Decided February 25, 1927.)

### Appeal from Johnson Circuit Court.

1. Trover and Conversion—Evidence Held to Show Conversion of 800 Railroad Ties Only.—Evidence held to show that railroad company appropriated to its own use, without payment therefor, 800 railroad ties, not 2,106 ties.

2. Appeal and Error—Rule as to Weight of Chancellor's Finding in Equity Case Held Applicable in Case Treated as Equity Case.— Rule as to weight to be given to chancellor's finding in an equity case held applicable, where case was treated by the parties and the court as an equity case.

3. Appeal and Error—Chancellor's Finding in Equity Case Will be Adopted by Appellate Court, Where Evidence is Conflicting and Truth Doubtful, but Not if Finding is Against Preponderance of Evidence, or if on Face of Record Finding is Erroneous.—Where evidence is conflicting and mind is in doubt as to the truth, the chancellor's finding in an equity case will be adopted by appellate court, but if his finding is against the preponderance of the evidence, or if on the face of the record the appellate court is convinced that finding is erroneous, such judgment will be rendered

as the testimony justifies without being guided by the chancellor's judgment.

BROWNING & REED and KIRK, KIRK & WELLS for appellant.

WHEELER & WHEELER for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, who was the plaintiff below, instituted this action in the Johnson circuit court against the appellant, who was the defendant below, in which he sought to recover $1,684.80, the value of 2,106 railroad ties belonging to the plaintiff and alleged to have been appropriated by the defendant company to its use. The defendant answered traversing the averments of the petition and, by an agreed order, the case was transferred to the equity docket, apparently under subsection 4, section 10 of the Civil Code, upon the theory that the case involved accounts so complicated as to render it impracticable for a jury to intelligently try it. The case was referred to the master commissioner to hear proof and make a report of his findings. The commissioner made a report finding that the defendant company had used 2,091 ties that belonged to the plaintiff; that the ties were worth 80c each, and that the sum of $1,672.80 was due the plaintiff from the defendant. Exceptions were filed to the commissioner's report, which were overruled, and the chancellor entered a judgment against the defendant company for the full amount prayed for in the petition.

At the time the controversy arose the plaintiff was engaged in manufacturing and selling cross-ties, and he claims that between some date in July and December 1, 1924, he delivered to East Point and Leslie stations in Johnson county, 11,800 ties, and that he sold and delivered to the company 9,444 of these ties, and that 2,356 ties should have remained after the company had taken up the number it had purchased from him. He admits that 250 ties were left, and he thus reaches the number 2,106, which he claims the defendant company used without payment.

The railway company was constructing or reconstructing its lines of railway through Johnson county and was purchasing ties from the plaintiff to be used in this work. The work was being done by a firm of contractors, but the record does not disclose whether they were independent contractors or working directly under the super-

vision of the defendant company. It does appear, however, that the railway company was purchasing the ties to be used in the work and furnishing them to the contractors. The plaintiff on one occasion found that 121 of his ties that had not been purchased by the defendant had been loaded on a flat car by the contractors and were used in the construction of the road. He protested and claims that a member of the firm of contractors told him they had used about 800 of his ties. He also claims that Willie Robinson, one of the foremen for the firm of contractors, told him that about 1,000 of his ties had been used. He prepared an affidavit to this effect, but when it was presented to Robinson and he was asked to sign it, he refused, saying the contractors had not taken that number of ties.

Some negotiations were had with representatives of the defendant company and it was agreed that plaintiff should be paid for any ties used in the construction work that had not been settled for by the defendant, and that 80c per tie was a fair value for such ties as had been used.

Appellant insists that Robinson and his employers, the contractors, were not employees or agents of the defendant company, and that the statements made to plaintiff by them would not be binding on the company. Be this as it may, we think the testimony of M. L. Chowning, representing the defendant, that he had inspected and received ties purchased from the plaintiff, is conclusive that approximately 800 of plaintiff's ties were used by the defendant and not paid for, and these were a part of the 11,800 claimed by the plaintiff to have been delivered at East Point and Leslie stations. Chowning produced a record kept by him showing the number and character of ties belonging to plaintiff received and paid for and the dates they were delivered. This record shows that between July 23 and December 2, 1924, the defendant company took up and paid for 10,775 ties, and, adding to this number 250 ties, which plaintiff admits were left on the ground, accounts for 11,025 ties, leaving approximately 800 unaccounted for. Chowning also testified that he took up and paid for 833 ties on December 5, 1924, but in referring to these later he said, "Those ties were ties you (indicating Bascom Robinson) had bought from Mr. Johnson and had nothing to do with this case." There is no substantial contradiction of the figures given by Chowning. Plaintiff kept no record showing the dates and amounts of payments made to him by the rail-

way company nor any record showing the number of ties accepted and taken up by it. It is clear, therefore, that the number of ties used by the defendant and not paid for by it was approximately 800, and the court erred in finding the number so used to be 2,106.

It is insisted for the appellee that the finding of the court should be treated as the verdict of a properly instructed jury and that its judgment should not be disturbed. The case was treated by the parties and the court as an equity case, and the rule as to the weight to be given the chancellor's finding in an equity case is the rule applicable here. City of Covington v. Limerick, 19 Ky. Law Rep. 330, 40 S. W. 254. The rule is thus stated in Ford Lumber and Mfg. Co. v. Cornett, 171 Ky. 404, 188 S. W. 466:

"The rule seems to be that if the evidence is conflicting, and the mind is in doubt relative to the truth of the matter, the decision of the chancellor upon the facts will be given sufficient weight to resolve the doubt in favor of his finding. But it is equally the rule that if his finding is against the preponderance of the evidence, or, if upon the face of the record, we are convinced that the chancellor erred in his finding of fact, it is then our right, as well as our duty, not to be guided by his judgment, but to render such judgment as we are convinced the testimony justifies. Deatley v. Tolle, 29 Ky. Law Rep. 1111; Wathen v. Wathen, 149 Ky. 504; Coomes Bros. v. Grigsby & Co., 151 Ky. 394, and many other cases. The rule does not require that the findings of the chancellor shall be palpably against the evidence before it can be disturbed on appeal, as is the case with the verdict of a jury. It is only necessary that his findings are not supported by the weight of the evidence."

We are convinced that the weight of the evidence shows the plaintiff entitled to judgment for the value of only 800 ties.

Wherefore, the judgment is reversed, with directions to enter a judgment in favor of plaintiff for the sum of $640.00.