# Rose v. Reese et al.

Dec. 19, 1941.

As Extended on Denial of Rehearing March 27, 1942.

R. L. Pope and O. W. Black for appellant.

H. H. Owens for appellees.

Opinion of the Court by Van Sant, Commissioner—Reversing.

William J. Moore departed this life on October 13, 1936, a resident of Knox county, Kentucky. Shortly thereafter his sister, Ethel Rose, appellant herein, was appointed administratrix of his estate. At the time of his decease Mr. Moore had approximately $1,000 cash and owned a small boundary of land situate in Knox county. He had no other property or money. On January 21, 1938, appellant, in her representative capacity, instituted this action against appellees, next of kin to deceased, seeking a settlement of the estate and praying that she be adjudged to be the owner of the entire estate, including both real and personal property, by reason of a verbal contract entered into between her and deceased, which was later reduced to writing, and, which reads:

> "Corbin Ky.
> "May 8. 1935.

> "To Who It May Concern

> "that I want all personal property and real estate go to my sister Ethel at my death according to our contract to witch she agreed to nurse and wait on me as long as I live.

> "W. M. J. Moore."

The defendant filed a joint answer denying the allegations of the petition and in the second paragraph alleged that plaintiff and her husband lived in the home of her deceased brother and that deceased paid the living expenses of the household; that on account of her re-

lationship to him there rested upon her the duty of doing all that she did for him and that he paid her in full for same in his lifetime. In paragraph 3 defendants asked that plaintiff be required to account for the money which came into her hands as administratrix. In paragraphs 4 and 5 they allege certain matters in respect to the distribution of the estate which it is unnecessary for us to discuss in view of the conclusions hereinafter expressed. The evidence was taken on depositions and submitted to the Honorable Robert R. Friend of Irvine, Estill county, Kentucky, as special judge, who rendered judgment declaring the written contract to be void because in the judgment of the chancellor it was not executed by deceased. He allowed the sister the sum of $150 for services rendered deceased in the last few years of his life.

The first question for our determination is whether the evidence justifies the chancellor's finding that Mr. Moore did not sign the writing. If that question should be answered in the negative, it then will be necessary to determine whether the services required of her by the terms of the contract were fully performed.

While the question as to the existence or execution of the contract was one for proper submission to a jury, the case was prepared and treated in its entirety as an equitable action, and though we have held that in an ordinary action where the right to trial by jury is waived and the case submitted to the court on law and facts, its finding in regard to the facts will be given the weight of a properly instructed jury, Southern R. Co. v. Frankfort Distillery Co., 233 Ky. 771, 26 S. W. (2d) 1025, certiorari writ denied 282 U. S. 868, 51 S. Ct. 75, 75 L. Ed. 767; May v. Ken-Rad Corp., 279 Ky. 601, 131 S. W. (2d) 490, we have, nevertheless, as consistently held that in equity cases, if the Court of Appeals entertains no more than a doubt as to the correctness of the chancellor's findings, the judgment will be approved, but if the evidence furnishes more than a doubt as to the correctness of the chancellor's findings, the judgment will be reversed. Crowley v. Ballard, 279 Ky. 484, 131 S. W. (2d) 463. We further are committed to the rule that although the issue involved is one it was proper to submit to a jury, nevertheless if the case was prepared and tried as an equitable action, it will be treated as such on appeal and the rule applicable to strictly equitable cases will control. Crowley v. Ballard, supra; Chesapeake & O. R. Co. v. Johnson,

218 Ky. 550, 291 S. W. 744. The reasons for adopting a different rule in ordinary actions from that adopted in equity actions is obvious. In ordinary actions the jury or court has an opportunity to see the witnesses and observe them as they testify, and for that reason is in better position than we to determine the truth; but where the case is prepared by depositions and the trial judge does not have the opportunity to observe the witnesses and hear them testify, he has acquired no added advantage over this court in arriving at the truth, unless it be, perhaps, that he might be better acquainted with the witnesses. But even that advantage is not held by the chancellor in this case, because he was a stranger to the community.

It is earnestly contended by appellees that the contract sued on is an instrument which took effect upon the death of Mr. Moore and therefore was in the nature of a will, and, not being properly witnessed and not being in the sole handwriting of the deceased, it is a nullity. But with this contention we cannot agree. It is a contract for services rendered the deceased. Had the deceased bequeathed and devised the property to appellant, the contract would have been fulfilled, but since no will was executed, appellant is entitled to have the obligation of the contract performed, if the evidence is sufficient to establish the contract to have been entered into and performed on the part of Mrs. Rose. For a determination of these questions we must look to the evidence.

For 6 years immediately preceding his death Mr. Moore was afflicted with a serious heart trouble, and was unable to engage in any profitable occupation. His condition required the attention of a nurse. At the commencement of the period of disability the appellant and her husband moved into Mr. Moore's home. The evidence for appellees was to the effect that appellant did not treat her brother well and did not care for him properly; that she deserted him often, for as long as 3 weeks at one time, and that Mr. Moore paid all of the living expenses. All of this evidence was introduced by testimony of the individual appellees and is totally unsupported by facts or circumstances related by neighbors and disinterested friends of the deceased. Appellant introduced 2 physicians who attended the deceased in his illness, one of whom made 67 and the other 12 visits to the home in the last 5 years. They testified that it was necessary

for Mr. Moore to have the constant care of a nurse, and that his sister took excellent care of him, kept him neat and clean, and as comfortable as possible under the circumstances; on each visit to the home she was in attendance upon him; and one of them testified she came to his office a great number of times to obtain medicine to administer to him. The groceryman with whom they dealt testified that the Roses paid the bills. Many other disinterested witnesses testified that they were intimately acquainted with Mr. Moore, that they called upon him frequently; and, on all those occasions, Mrs. Rose was in constant attendance upon him, nursed him during the entire time he was ill, cooked his meals, and served them to him when he was required to remain in bed. Several testified that Mr. Moore in his lifetime told them that Mrs. Rose and he had been together a long time, that she had to cook and wait on him while he was sick, and because she was so good to him he was going to see that she got everything after he was gone. Eight neighbors and friends, including the 2 physicians, testified that appellant nursed and treated her brother with great and dutiful care. Two friends of deceased testified he had told them he had arranged for his sister to have everything at his death, in consideration of her having nursed him and having treated him so well.

Appellees admitted that they did very little in caring for their brother and seldom visited him. One of his nieces and her mother claimed that during the 3-week period they testified that Mrs. Rose deserted her brother, the mother cooked the meals and the niece delivered them to the house. Her absence for a period of three weeks was sharply denied. None of the neighbors remembered her ever being away for more than a day or two and we hardly see how she could have been away from the neighborhood without the neighbors knowing something about it.

Mrs. Rose testified that she wrote the body of the contract at the dictation of her brother. Samples of her writing executed by her at the direction of counsel for appellees are in evidence and appear to have been written by the same person who penciled the body of the contract. Although some of appellees testified that they believed the signature to the instrument not to be that of Mr. Moore, the preponderance of the evidence is to the contrary. Appellant testified that he signed it in her

presence; one witness said that Mr. Moore told her that "he had fixed his papers" so that Ethel would have everything after his death; his banker testified that in his judgment the signatures on the checks admittedly signed by Mr. Moore were the same as that contained on the contract; and other unrelated witnesses, who were familiar with his handwriting, testified that in their opinions it was genuine. We have carefully examined the signatures and while our knowledge of graphology is not sufficient to qualify us as experts, the signature on the contract appears to us to conform in every particular to the signature on the checks. Appellant's purchase from her brother, Nealie Moore, "of his part of the estate" was not a recognition of his right to a portion of the estate under the circumstances related by her. She testified that Nealie was charged with a crime and needed $100 to defray expenses necessary to be incurred in his defense, and that he offered to sign over to her his part of the estate. She said that she was willing to give him the $100 without any consideration and that she let him execute the deed because he insisted upon it and that he did so voluntarily. Nor do we think that the testimony that she talked with various others of the heirs about purchasing their interest in the estate precludes her from claiming under the contract. At most, that was an endeavor to amicably settle the controversy. The testimony of appellees is totally inconsistent with the circumstances proven by disinterested neighbors and friends, and, in the light of the other evidence, is not persuasive of the contention that Moore did not affix his signature to the memorandum contract. We are convinced by all the evidence that the deceased entered into the contract sued on and that it was fully performed on the part of Mrs. Rose.

It seems from the judgment that the feature of the evidence which influenced the chancellor the most in his decision that the deceased had not signed the writing was that he was an uneducated man and incapable of using legal terms. Just what legal terms the chancellor refers to we are at loss to understand. The phrase "To Whom It May Concern" (although the writer expresses it "To Who It May Concern") is one used by laymen generally and its use requires no legal education. From the spelling, lack of punctuation, failure to capitalize, and the composition of the writing, it seems to us that the author of the writing was an uneducated person.

For the reasons indicated the judgment is reversed with directions that it be set aside and that another be entered declaring appellant to be entitled to the estate under the terms of testator's contract with appellant. It appears that certain persons who are not parties to this action purchased the real estate of Wm. J. Moore, deceased, at the sale made in pursuance of the unsuperceded judgment. This decision shall not be construed to affect the rights thus acquired.

Whole Court sitting.